TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00582-CV







Ancira GMC Trucks and Motor Homes, Inc., Appellant



v.



Motor Vehicle Board and Motor Vehicle Division, 

Texas Department of Transportation, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT 


 NO. 96-03880, HONORABLE JOSEPH H. HART, JUDGE PRESIDING







 Appellant Ancira GMC Trucks and Motor Homes, Inc. ("Ancira") appeals from
the final judgment of the district court, upholding a final order issued by appellee, the Motor
Vehicle Board and Motor Vehicle Division of the Texas Department of Transportation, (1) which
found that Ancira violated the Motor Vehicle Commission Code (the "Code") (2) and assessed a
$2000 civil penalty. Ancira presents five issues on appeal. We will affirm the district-court
judgment. 

BACKGROUND

 In September 1988, Ancira, a licensed new-motor-vehicle dealer, entered into a
retail installment contract with Mitchell and Betty Kendrick (the "Kendricks") for the sale of a
new motor home. The Kendricks took possession of the motor home and drove it to Albany,
Georgia. Ancira submitted an application to the Texas Department of Highways and Public
Transportation (the "Department") for the issuance of a certificate of title to the Kendricks. The
application listed C.I.T. Group Sales Finance, Inc. ("CIT") as a lienholder of the motor home. 

 Ancira later learned that the Kendricks could not qualify for CIT financing and
brought suit against CIT in the district court of Bexar County ("Bexar County Suit"). Ancira
asserted that it had applied for a certificate of title on the motor home with the Department before
CIT refused financing to the Kendricks, and that if title was issued, the motor home would be
classified as "used," causing irreparable harm to Ancira. Ancira requested that the district court
permanently enjoin the Department from issuing title to the Kendricks. (3) The court rendered an
agreed judgment ("Agreed Judgment") finding that Ancira's application for title was
improvidently submitted and did not constitute a first sale of the motor home, and enjoining the
Department from issuing title to the Kendricks. Title to the motor home was never issued to the
Kendricks.

 The Kendricks surrendered the motor home to Ancira in Louisiana. In June 1989,
Ancira sold the same motor home to Margaret Fields and Barbara Drake. Ancira represented to
both Fields and Drake that the motor home was new. Only after Fields and Drake purchased the
motor home did they discover the prior transaction between Ancira and the Kendricks. Fields and
Drake then filed a "Consumer Notice of Complaint" with the Board against Ancira for violation
of section 4.06(a)(5) and (6) of the Code. See Code §§ 4.06(a)(5), (6). 

 The Board filed a "Complaint and Notice of Hearing," notifying Ancira that a
contested case hearing would be conducted to determine whether Ancira engaged in business in
violation of the Code. See Code § 3.08(a) ("A hearing shall be conducted in all contested cases
which arise in connection with this Act or any rule of the board."). The complaint alleged that
Ancira's misrepresentation to Fields and Drake "constitutes a violation of Section 17.46 of the
Texas Business and Commerce Code and thereby violates Section 4.06 of the Code." (4) See id.
§§ 4.06; Tex. Bus. & Com. Code Ann. § 17.46 (West 1987) ("DTPA"). (5) 

 After a contested case hearing, the hearing examiner issued a proposal for decision. 
See Code § 3.08(g). The examiner opined that while Ancira's conduct was improper, the Agreed
Judgment rendered in the Bexar County Suit, declaring the motor home as new, was binding. As
a result, the examiner ultimately concluded that Ancira's representation to Fields and Drake that
the motor home was new did not violate the Code and recommended that the Board dismiss the
proceeding because Ancira did not willfully defraud Fields or Drake under the Code.

 The Board voted to reject the proposal for decision, finding that Ancira "violated
Section 4.06(a)(5) and (6) of the . . . Code by deceptively representing that the vehicle sold to
Margaret Fields and Barbara Drake on June 20, 1989, was a new motor vehicle." See id. The
Board then imposed a $2000 civil penalty.

 Ancira sought judicial review in district court. See Code § 7.01 ("Any party to a 
proceeding before the board that is affected by a final order . . . of the board is entitled to judicial
review of any such final board action, under the substantial evidence rule . . . ."). Having found
that the motor home sold to Fields and Drake was a used vehicle "within the meaning of
§ 17.46(b)(6) of the Deceptive Trade Practices Act," the court determined that "substantial
evidence in the record supports a conclusion that Ancira's representation that the vehicle was new
constitutes a violation of § 17.46(b)(6) of the DTPA, which thereby constitutes a violation of
§ 4.06(a)(6) of the . . . Code." Accordingly, the district court affirmed the decision and penalty
assessed against Ancira by the Board. 

 On appeal, Ancira contends that the district court erred in affirming that Ancira
violated section 17.46(b)(6) of the DTPA and thus section 4.06(a)(6) of the Code because: (1)
the DTPA was neither pleaded nor tried in the agency proceeding; (2) the Board made no findings
of fact and conclusions of law that Ancira violated the DTPA; (3) there is insubstantial evidence
to support a violation of the DTPA; and (4) the Board has no jurisdiction over violations of law
related to the sale of a used motor vehicle. Ancira further questions whether the district court's
judgment can be affirmed on the ground that Ancira violated section 4.06(a)(5) of the Code.


DISCUSSION

Failure to Plead or Try DTPA During Proceeding

 Ancira initially contends that the district court erred in affirming the Board on a
theory that was raised for the first time on appeal. As part of this contention, Ancira first argues
that the complaint did not provide Ancira with meaningful notice because it did not state that the
Board "was seeking sanctions based on a violation of Section 17.46(b)(6) of the DTPA." Madden
v. Texas Bd. of Chiropractic Exam'rs, 663 S.W.2d 622, 626 (Tex. App.--Austin 1983, writ ref'd
n.r.e.) (notice is an element of procedural due process).

 To be meaningful, notice must be "relative to the issues of fact and law which will
control the result to be reached by the administrative tribunal." Madden, 663 S.W.2d at 626-27
(citing Morgan v. United States, 304 U.S. 1, 18-19 (1938)) (emphasis in original). As there are
no specific rules by which to measure meaningful notice, "due process notice must be 'appropriate
to the nature of the case.'" University of Tex. Med. Sch. v. Than, 874 S.W.2d 839, 845-46 (Tex.
App.--Houston [1st Dist.] 1994), aff'd, 901 S.W.2d 926 (Tex. 1995) (quoting Cleveland Bd. of
Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).

 The DTPA was created "to protect consumers against false, misleading, and
deceptive business practices . . . ." DTPA § 17.44. The legislature mandates that the DTPA be
liberally construed and applied to promote this underlying purpose. See id. Section 17.46 of the
DTPA provides that false, misleading, and deceptive business practices are unlawful and sets forth
a non-exclusive list of acts that constitute such practices. See id. § 17.46. Section 17.46 is
deliberately non-exclusive because deceptive or misleading conduct does not always fall within
a certain group of actions, and the legislature did not intend for those subject to the DTPA to
"seek out loopholes in the Act's provisions." Reed v. Israel Nat'l Oil Co., 681 S.W.2d 228, 237
(Tex. App.--Houston [1st Dist.] 1984, no writ) (quoting Pennington v. Singleton, 606 S.W.2d 682,
687 (Tex. 1980)). Thus, a cause of action brought under this section is not limited to one of the
acts enumerated in the list and may be altered to conform to the evidence related to the allegations
at issue. See Aetna Cas. & Sur. Co. v. Martin Surgical Supply Co., 689 S.W.2d 263, 270 (Tex.
App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.) ("To limit a consumer to a cause of action based
only on those practices specifically enumerated would defeat the legislative intent of the Act.");
Reed, 681 S.W.2d at 236 (special issue submitted to jury addressing violation of 17.46(b) may
be altered to conform issue to evidence in case). 

 Section 17.46(b)(6) states that "representing that goods are original or new if they
are deteriorated, reconditioned, reclaimed, used, or secondhand" is unlawful. Although the
complaint against Ancira was seemingly formulated with this provision in mind, the complaint
does not specifically follow the statutory language. The complaint alleges that Ancira violated
the Code "by representing to the consumer that a 1989 Southwind motor home was a new vehicle,
when in truth and in fact the motor home had been previously purchased by another consumer
which representation also constitutes a violation of Section 17.46 of the [DTPA] and thereby
violates Section 4.06(a)(6) of the Code." 

 Given the broad purpose of section 17.46 and the specificity of the conduct alleged
in the complaint, we hold that Ancira was given meaningful notice of the issues of fact and law
that it would be called upon to defend before the Board. See Madden, 663 S.W.2d at 626-27;
Than, 874 S.W.2d at 845-46.

 Ancira next argues that the Board failed to comply with section 2001.052(a) of the
Administrative Procedure Act ("APA") (6) because its "Complaint and Notice of Hearing did not
mention Section 17.46(b)(6) of the DTPA" (emphasis added). See APA § 2001.052(a). The APA
mandates that notice of a hearing in a contested case must include a reference to the particular
sections of the statutes and rules involved. See id. Ancira asserts that "particular" in this context
means the "smallest distinct and numbered subdivision," and thus the Board should have referred
to section 17.46(b)(6) specifically.

 However, section 17.46(b) does not provide a distinct numbered list. Section
17.46(b) is a non-exclusive list. Thus, there are certainly occasions where a person brings a
DTPA claim for acts that are not listed within a particular subsection of 17.46(b). For example,
in this case the Board's allegations did not fall completely within a particular subsection of section
17.46(b) because its complaint was modified to fit the particular facts of the case. Therefore,
section 17.46 was the particular subsection of the DTPA in this context, and the Board complied
with section 2001.052(a) of the APA.

 Ancira finally argues that "the parties did not try a section 17.46(b)(6) DTPA
violation" and thus could not raise it for the first time on appeal. See City of San Antonio v.
Heim, 932 S.W.2d 287, 291 (Tex. App.--Austin 1996, writ denied) (citing Davis v. Campbell, 572
S.W.2d 660, 662 (Tex. 1978)) ("On appeal, parties are restricted to the theory on which the case
was tried."). Ancira relies heavily on a conversation between the parties and the hearing
examiner during opening statements at the administrative proceedings. The examiner stated, "The
pleadings reflect that your [the Board's] allegation is that Drake and Fields were defrauded." 
Ancira asserts that this statement shows that the Board only alleged during the hearing that Ancira
violated section 4.06(a)(5) and not section 4.06(a)(6) of the Code. See Code §§ 4.06(a)(5) (Board
may reprimand licensee who willfully defrauds retail buyer); (6) (reprimand allowed for violation
of any law [DTPA] relating to sale of motor vehicle). However, Ancira takes this statement out
of context. 

 Before the examiner made this remark, counsel for the Board suggested that the
State was also defrauded by Ancira during this case. Ancira correctly pointed out, and the
hearing examiner agreed, that the Board's complaint only alleged that Fields and Drake had been
defrauded. As a result, counsel for the Board retracted her claims that the State was defrauded
by Ancira. Directly after this retraction, the hearing examiner made the statement that the
pleadings reflect that the Board was alleging that Fields and Drake were defrauded, to make
certain that everyone understood that the Board was not alleging that the State was defrauded. 
In this context it is clear that this conversation does not represent, as Ancira alleges, a general
belief between the hearing examiner and the parties that the case was only being tried on the
theory that Ancira defrauded Fields and Drake under 4.06(a)(5) and not 4.06(a)(6) of the Code. 

 Section 4.06(a)(6) of the Code provides that the Board may reprimand a licensed
motor-vehicle dealer for violating any law relating to the sale of new motor vehicles. See Act of
June 8, 1995, 74th Leg., R.S., ch. 357, § 14, 1995 Tex. Gen. Laws 2887, 2893 (Tex. Rev. Civ.
Stat. Ann. art. 4413(36), § 4.06(a)(6), since amended) (legislature deleted the term "new" in
amended provision). To show that the sanctions assessed against Ancira fall under 4.06(a)(6) of
the Code, the Board asserted in its complaint that Ancira violated section 17.46 of the DTPA by
representing to Fields and Drake that the motor home was new when it had been previously
purchased by the Kendricks, a violation of section 4.06 of the Code. Throughout the contested
case hearing, the Board asserted and presented evidence that the motor home had been previously
sold and used before it was later sold to Fields and Drake. (7) The Board in its final order
determined that Ancira violated section 4.06(a)(6) of the Code by representing to Fields and Drake
that the motor home was new. Because the record reflects that section 17.46 of the DTPA was
relied on throughout the administrative process to establish that Ancira violated section 4.06(a)(6)
of the Code, we hold that it was properly before the district court on appeal.

 We overrule Ancira's first issue.


Findings of Fact and Conclusions of Law

 By its second issue, Ancira argues that the district court erred in affirming the
Board's conclusion in its final order that Ancira violated section 4.06(a)(6) of the Code because
the Board made no findings of fact or conclusions of law that Ancira violated section 17.46(b)(6)
of the DTPA.

 The Code requires that the Board's final order "include a separate finding of fact
with respect to each specific issue the board is required by law to consider in reaching a decision"
and "additional findings of fact and conclusions of law on which the order or decision is based." 
Code §§ 3.07(a)(1), (2); see also APA § 2001.141(b) (order must include findings of fact and
conclusions of law, stated separately). In the present case, the Board, as set forth in the complaint
against Ancira, had to determine whether Ancira violated section 4.06(a)(6) by representing that
the motor home at issue was new when it had been previously purchased by another consumer. 
In its final order, the Board, adopting the first ten findings of fact made by the hearing examiner,
found in pertinent part that: (1) Ancira sold a motor home to the Kendricks; (2) the Kendricks
took possession of the motor home but later returned it to Ancira in Louisiana; and (3) Ancira sold
the same motor home to Fields and Drake, representing that the motor home was a new motor
vehicle. The Board separately concluded that Ancira violated section 4.06(a)(6) of the Code by
representing that the vehicle sold to Fields and Drake was new. Because the Board's order set
forth separate findings of fact related to the special issues presented the Board in the complaint
against Ancira and additional conclusions of law on which the order was based, the district court
did not err in affirming the Board's order and its conclusions.

 We overrule issue two.


Application of DTPA to Section 4.06(a)(6) of the Code

 In part of issue three Ancira challenges the applicability of section 17.46(b)(6) of
the DTPA to section 4.06(a)(6) of the Code. Ancira first contends that the Board does not have
jurisdiction to determine whether a person has violated the DTPA. To support its contention,
Ancira relies on Kawasaki Motors Corp. v. Texas Motor Vehicle Commission, 855 S.W.2d 792
(Tex. App.--Austin 1993, no writ). In Kawasaki Motors, a franchisee brought an administrative
complaint against his franchisor for wrongful termination of the franchise relationship pursuant
to section 5.02(3) of the Motor Vehicle Code. The Motor Vehicle Board found in favor of the
franchisee and ordered the franchisor to pay damages for violations of the Code. On appeal, this
Court, finding no express or implied delegation by the legislature to the Board to adjudicate claims
under section 5.02(14) of the Code, (8) held that the Board could not adjudicate the private dispute
between the franchisee and the franchisor. See Kawasaki Motors, 855 S.W.2d at 799. 

 Ancira's reliance on Kawasaki Motors, however, is misplaced. In Kawasaki
Motors, while we held that the Board did not have authority under the Code to adjudicate a private
party dispute by ordering the franchisor to pay damages to the franchisee, this Court recognized
that the Code expressly gave the Board power to "make a finding of violations under 5.02(14) and
impose civil penalties for such violations." Id. That is the situation in the present case. 

 Section 4.06(a)(6) of the Code, entitled "Sanctions; denial, revocation, or
suspension of license," gives the Board authority to reprimand a licensee for violation of any law
related to the sale of new motor vehicles. See Act of June 8, 1995, 74th Leg., R.S., ch. 357,
§ 14, 1995 Tex. Gen. Laws 2887, 2893 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.06(a)(6),
since amended). Plainly read, this section of the Code gives the Board power to impose a penalty
for violation of any law if that law relates to the sale of new motor vehicles. Therefore, we hold
that the Board had jurisdiction to find that Ancira violated the DTPA and to impose a penalty. 
See Kawasaki Motors, 855 S.W.2d at 799 (Board could find violation of Code and impose civil
penalties for such violations where Code expressly or implicitly authorizes such findings); see also
Texas Educ. Agency v. Cypress-Fairbanks ISD, 830 S.W.2d 88, 91 (Tex. 1992) (as education
code gives commissioner of education express authority to hear appeals by "any person aggrieved
by . . . actions or decisions of any board of trustees," the commission may consider whether
school district violated federal law but has no authority to grant all relief provided by this law,
including damages and injunctive relief). 

 Ancira next argues that section 17.46(b)(6) of the DTPA is not a law "relating to
the sale . . . of a new motor vehicle" (9) because it does not specifically mention the sale of motor
vehicles, and thus Ancira did not violate section 4.06(a)(6) of the Code. We disagree.

 The DTPA protects consumers against "false, misleading, and deceptive business
practices." DTPA § 17.44. Again we note that while the DTPA provides a list of deceptive or
misleading acts that are unlawful, the list is not exclusive. See DTPA § 17.46. Thus, acts not
enumerated but equally deceptive or misleading may also constitute a violation of the DTPA. The
complaint against Ancira closely followed the language in section 17.46(b)(6), but was modified
to fit the facts of this case, alleging that Ancira violated section 17.46 of the DTPA by
representing to Fields and Drake that the motor home was a new vehicle when in truth and in fact
the motor home had been previously purchased and used by another consumer. We decline to
hold that the Code deprives the Board of the ability to apply the DTPA to the sale of motor
vehicles. We find no evidence that the legislature intended the Code to be so narrowly construed.

 Therefore, we overrule Ancira's first arguments under issue three.


Substantial-Evidence Review

 In the remainder of issue three, Ancira asserts that the district court erred in
affirming the Board's order because the motor home was new as a matter of law, and thus there
is insubstantial evidence to show that Ancira misrepresented the status of the motor home to Fields
and Drake. The district court reviews a final order of the Board under the substantial-evidence
rule. See Code § 7.01(a). Pursuant to this standard, the district court presumes that the Board's
order is supported by substantial evidence, and the appealing party, here Ancira, has the burden
to overcome this presumption. See Meier Infiniti Co. v. Motor Vehicle Bd., 918 S.W.2d 95, 98
(Tex. App.--Austin 1996, writ denied). The court determines whether the Board's findings were
supported by substantial, probative, reliable evidence found in the whole record such that
reasonable minds could have reached the conclusion that the Board must have reached to justify
its action. See Suburban Util. Corp. v. Public Util. Comm'n, 652 S.W.2d 358, 364 (Tex. 1983);
Clear Creek ISD v. Commissioner of Educ., 775 S.W.2d 490, 493 (Tex. App.--Austin 1989, no
writ). The true test is not whether the agency reached the correct conclusion but "whether some
reasonable basis exists in the record for the action taken by the [Board]." State v. Public Util.
Comm'n, 883 S.W.2d 190, 203-04 (Tex. 1994); see Meier, 918 S.W.2d at 98.

 The Motor Vehicle Code defines a "new motor vehicle" as a "motor vehicle which
has not been the subject of a 'retail sale' without regard to the mileage of the vehicle." Code
§ 1.03(26). A "'retail sale' means the sale of a motor vehicle" unless the purchaser acquires the
vehicle for the purpose of resale or the transaction at issue involves a situation in which a dealer
or a manufacturer obtains license plates or tags. Id. § 1.03(32); see also Tex. Tax Code Ann.
§ 153.001 (West Supp. 1999) (sale of motor vehicle includes installment and credit sale). 

 In this case the evidence established that Ancira, a licensed new-motor-vehicle
dealer, entered into a retail installment contract with the Kendricks for the sale of a new motor
home. A retail installment contract is evidence of a retail installment transaction, wherein a retail
buyer acquires a motor vehicle from a retail seller under a contract for a sum consisting of the
cash sale price and other charges, and agrees with the seller to pay part or all of such sum in one
or more deferred installments. (10) Pursuant to the contract in this case, the Kendricks "bought and
received" the motor home. They took possession of it and drove it to Georgia. Following the
transaction, Ancira submitted an application to the Department of Transportation requesting that
a certificate of title to be issued to the Kendricks. The application named Ancira as the previous
owner and seller of the motor home and the Kendricks as its new owner and purchaser. When
the Kendricks returned the motor home to Ancira, Ancira sold the same vehicle to Fields and
Drake, representing that it was new. 

 The record reflects that there is reliable evidence to support the Board's conclusion
that the motor home was not new when it was sold to Fields and Drake because it had already
been the subject of a retail sale to the Kendricks. Ancira urges, however, that the record
conclusively establishes that the motor home was new when it was sold to Fields and Drake
because "[i]t was new under the final judgment" in the Bexar County Suit, and that judgment
should be given "preclusive effect." 

 Assuming, without deciding, that the Agreed Judgment was binding on the Board,
the Agreed Judgment does not conclusively establish that the motor home was "new" because the
definition of a new motor vehicle relied on in the Agreed Judgment is not fully applicable to the
administrative proceeding brought in this case under the Motor Vehicle Code. In the Bexar
County Suit, Ancira, concerned about the effect that issuing title to the Kendricks would have on
the status of the motor home, requested that the court permanently enjoin the Department from
issuing title. The district court rendered the parties' Agreed Judgment, which, following the
language of the Certificate of Title Act, (11) stated that the Kendrick transaction did not constitute
a "first sale" of the motor home. (12) A first sale, under the Certificate of Title Act, is defined as
the sale, with intent to pass an interest therein, of a motor vehicle that has not been previously
registered or licensed in this State. See Certificate of Title Act, 52d Leg., R.S., ch. 301, § 1,
1951 Tex. Gen. Laws 482, 482-83 (Tex. Rev. Civ. Stat. Ann. art. 6687-1, §§ 7, 9, since repealed
and codified at Tex. Transp. Code Ann. §§ 501.002 (5), (15) (West 1999)).

 On the other hand, the Code uses the term "retail sale" instead of "first sale" when
defining a new motor vehicle. Specifically, the Code defines a new motor vehicle as "a motor
vehicle which has not been the subject of a 'retail sale' without regard to the mileage of the
vehicle." Code § 1.03(26). While title may be some evidence of a retail sale, the Code does not
restrict the Board in what it may consider when determining the status of a motor vehicle. 
Instead, the Board may examine the entire transaction to establish whether a motor vehicle is new
or used. 

 Even taking the Agreed Judgment into consideration, there remains substantial
evidence to show that the motor home was the subject of a prior retail sale between Ancira and
the Kendricks. Under the substantial evidence rule, "[t]he evidence may preponderate against the
decision of the agency and nevertheless amount to substantial evidence" as long as there is some
reasonable basis for the agency's action. Meier, 918 S.W.2d at 98 (citing Texas Health Fac. v.
Charter Medical-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984) and Meador-Brady Management
Corp. v. Texas Motor Vehicle Comm'n, 833 S.W.2d 683, 688 (Tex. App.--Austin 1992), rev'd on
other grounds, 866 S.W.2d 593 (Tex. 1993)). In light of the retail installment contract between
Ancira and the Kendricks, the Kendricks' possession and use of the motor home, and Ancira's
initial efforts to secure title in the Kendricks' name, there is some probative evidence to support
the Board's finding that the motor home was not new when it was sold to Fields and Drake. 
Thus, the district court did not err in finding substantial evidence to support the Board's
determination that Ancira misrepresented to Fields and Drake that the motor home was new. 

 We overrule the remaining arguments asserted under issue three. 


Scope of Board's Jurisdiction 

 Ancira argues in its fourth issue that if the motor home sold to Fields and Drake
was in fact used, the Board did not have the power to assess damages against Ancira because the
Code did not apply to the sale of used vehicles at the time of this action. While we find this to
be an inventive argument, we disagree with Ancira's restrictive interpretation of the Board's
authority. 

 The Code was enacted "to insure a sound system of distributing and selling new
motor vehicles through licensing and regulating . . . dealers of those vehicles . . ." in order to
protect the economy of this State, the public interest, and the welfare of this State's citizens. See
Act of June 8, 1995, 74th Leg., R.S., ch. 357, § 1.02, 1995 Tex. Gen. Laws 2887, 2887 (Tex. 
Rev. Civ. Stat. Ann. art. 4413(36), § 1.02(a)(6), since amended) (term "new" omitted from
amended provision). With this policy in mind, the legislature vested the Board with the
jurisdiction to exercise the State's police power "to regulate all aspects of the distribution and sale
of new motor vehicles." Act of June 8, 1995, 74th Leg., R.S., ch. 357, § 3.01, 1995 Tex. Gen.
Laws 2887, 2890 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 3.01, since amended) (emphasis
added).

 In the present case, Ancira was a licensed new motor-vehicle dealer in Texas. 
Representing a used motor home as new, Ancira sold the motor home to its customers, Fields and
Drake. The parties entered into a retail installment contract, which also indicated that the motor
home was new. While it did not have jurisdiction at the time of these proceedings over used-car
sales, the Board was expressly given the power to regulate "all aspects" involving the sale of new
motor vehicles. Thus, the Board clearly has the authority to regulate transactions wherein dealers
purport to distribute or sell new motor vehicles. (13) We do not believe that it was the intention of
the legislature to allow a dealer to avoid application of the Code by a misrepresentation. 

 Therefore, we overrule Ancira's fourth issue.


Willful Fraud

 Ancira questions in its final issue whether the district court's judgment can be
affirmed on the ground that Ancira willfully defrauded Fields and Drake under section 4.06(a)(5)
of the Code. We do not reach this question, however, because the district court did not base its
decision on the Board's conclusion that Ancira violated section 4.06(a)(5) of the Code. Instead,
the court determined that there was substantial evidence in the record to support the Board's
conclusion that Ancira violated section 4.06(a)(6) of the Code by representing that the motor home
was new. As we have upheld this finding, we need not determine whether the district court could
have affirmed the Board's conclusions on other grounds.

 Thus, we overrule Ancira's final issue.


CONCLUSION

 Having disposed of all of the issues before us, we affirm the district court's
judgment.



 


 Lee Yeakel, Justice

Before Chief Justice Aboussie and Justices B. A. Smith and Yeakel

Affirmed

Filed: September 10, 1999

Do Not Publish
1. Throughout this case, the appellee has been referred to interchangeably as "Motor Vehicle
Commission," "Motor Vehicle Division," and "Motor Vehicle Board." As it is currently
designated the "Motor Vehicle Board," we will refer to this agency as the "Board." See Tex.
Rev. Civ. Stat. Ann. art. 4413(36), § 2.01(b) (West Supp. 1999).
2. See Act of June 8, 1995, 74th Leg., R.S., ch. 357, §§ 1-25, 1995 Tex. Gen. Laws 2887,
2887-2903 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), since amended). We will cite to the current
version of the Code unless inconsistent with certain provisions of the Code in effect during these
proceedings. 
3. The Department was not a named defendant in the Bexar County Suit. In a letter filed by
the Department with the district court, the Department asserted that it is not a real party in interest
in this case and suggested that "[a]ll necessary parties may not be before the Court at the present
time."
4. The Board also alleged that Ancira wrongfully coerced the Kendricks to submit to voluntary
repossession thereby violating section 4.06(a)(5) and (6) of the Code and section 17.46(b)(2) of
the Business and Commerce Code. This allegation is not at issue on appeal. 
5. See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1999).
6. See Tex. Gov't Code Ann. §§ 2001.001-.902 (West 1999).
7. The Board also argued that Ancira willfully defrauded Fields and Drake under 4.06(a)(5)
of the Code for representing that the motor home was new when Ancira knew it was not.
8. Generally, an agency may exercise only those specific powers that the law confers upon it
or those powers that are reasonably necessary to fulfill a function or perform a duty that the
legislature has expressly placed in the agency. Kawasaki Motors, 855 S.W.2d at 797 (citing Texas
Dep't of Human Servs. v. Christian Care Ctrs., Inc., 826 S.W.2d 715, 719 (Tex. App.--Austin
1992, writ denied)).
9. See Act of June 8, 1995, 74th Leg., R.S., ch. 357, § 14, 1995 Tex. Gen. Laws 2887, 2893
(Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.06(a)(6), since amended) (Board may reprimand
a licensee for violation of any law relating to the sale of a new motor vehicle).
10. See Vehicle Installment Sales Act, 74th Leg., R.S., ch. 88, § 8, 1995 Tex. Gen. Laws 873,
876 (Tex. Rev. Civ. Stat. Ann. art. 5069, § 7.01(d), since repealed); Act of June 5, 1991, 72nd
Leg., R.S., ch. 341, § 1, 1991 Tex. Gen. Laws 1386, 1386-87 (Tex. Rev. Civ. Stat. Ann. art.
5069, § 7.01(e), since repealed).
11. See Certificate of Title Act, 46th Leg., R.S., ch. 4, §§ 1-66, 1939 Tex. Gen. Laws 602,
602-12 (Tex. Rev. Civ. Stat. Ann. art. 6687-1, since repealed and codified at Tex. Transp. Code
Ann. §§ 501.001-.159 (West 1999)).
12. We further observe that the final judgment in the Bexar County Suit never uses the word
"new."
13. Ancira cites Casa Ford, Inc. v. Ford Motor Co., 951 S.W.2d 865 (Tex. App.--Texarkana
1997, pet. denied) to support its contention that the Board lacked jurisdiction over the sale in this
case. However, the facts in Casa Ford are readily distinguishable from those before us. In Casa
Ford, the parties did not dispute the sale of the motor vehicle; in fact, it was undisputed that the
car at issue was used when it was sold. The issue in Casa Ford was whether the dealer, who was
later sued because the used car had, inter alia, a defective seatbelt, was entitled to reimbursement
from Ford Motor Company under the Code. See Casa Ford, 951 S.W.2d at 871. The court of
appeals found that the Code did not apply to the sale of used motor vehicles. Id. at 872. Here
the complaint is centered around the sale of a motor home that the dealer represented as new. 



="BR2">

 


 Lee Yeakel, Justice

Before Chief Justice Aboussie and Justices B. A. Smith and Yeakel

Affirmed

Filed: September 10, 1999

Do Not Publish
1. Throughout this case, the appellee has been referred to interchangeably as "Motor Vehicle
Commission," "Motor Vehicle Division," and "Motor Vehicle Board." As it is currently
designated the "Motor Vehicle Board," we will refer to this agency as the "Board." See Tex.
Rev. Civ. Stat. Ann. art. 4413(36), § 2.01(b) (West Supp. 1999).
2. See Act of June 8, 1995, 74th Leg., R.S., ch. 357, §§ 1-25, 1995 Tex. Gen. Laws 2887,
2887-2903 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), since amended). We will cite to the current
version of the Code unless inconsistent with certain provisions of the Code in effect during these
proceedings. 
3. The Department was not a named defendant in the Bexar County Suit. In a letter filed by
the Department with the district court, the Department asserted that it is not a real party in interest
in this case and suggested that "[a]ll necessary parties may not be before the Court at the present
time."
4. The Board also alleged that Ancira wrongfully coerced the Kendricks to submit to voluntary
repossession thereby violating section 4.06(a)(5) and (6) of the Code and section 17.46(b)(2) of
the Business and Commerce Code. This allegation is not at issue on appeal. 
5. See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1999).
6. See Tex. Gov't Code Ann. §§ 2001.001-.902 (West 1999).
7. The Board also argued that Ancira willfully defrauded Fields and Drake under 4.06(a)(5)
of the Code for representing that the motor home was new when Ancira knew it was not.
8. Generally, an agency may exercise only those specific powers that the law confers upon it
or those powers that are reasonably necessary to fulfill a function or perform a duty that the
legislature has expressly placed in the agency. Kawasaki Motors, 855 S.W.2d at 797 (citing Texas
Dep't of Human Servs. v. Christian Care Ctrs., Inc., 826 S.W.2d 715, 719 (Tex. App.--Austin
1992, writ denied)).
9. See Act of June 8, 1995, 74th Leg., R.S., ch. 357, § 14, 1995 Tex. Gen. Laws 2887, 2893
(Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.06(a)(6), since amended) (Board may reprimand
a licensee for violation of any law relating to the sale of a new motor vehicle).
10. See Vehicle Installment Sales Act, 74th Leg., R.S.