Kawasaki-rehearing 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 



ON MOTION FOR REHEARING
 

 





NO. 3-92-047-CV





KAWASAKI MOTORS CORP. U.S.A.,



 APPELLANT


vs.





TEXAS MOTOR VEHICLE COMMISSION,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 471,032, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





 The opinion and judgment of the Court in this cause handed down on January 13,
1993, are withdrawn and the following opinion substituted therefor.

 Kawasaki Motors Corp. U.S.A. ("Kawasaki") appeals from the judgment of the
district court affirming a final order of the Texas Motor Vehicle Commission ("the Commission"). 
We will reverse the district court's judgment and will render judgment remanding this proceeding
to the Commission for further proceedings consistent with this opinion.



BACKGROUND


 This dispute arises out of a franchise relationship between Kawasaki and D.K.D.
Investments, d/b/a Humble Kawasaki ("D.K.D."). In 1986, D.K.D. purchased an existing
Kawasaki motorcycle dealership in Humble, Texas and entered into a franchise agreement with
Kawasaki. The franchise agreement included a floorplan-financing agreement and granted
Kawasaki a security interest in the financed vehicles. By separate agreement, D.K.D. leased a
computer system and software package from Kawasaki. This system was specifically designed
for placing merchandise and parts orders with Kawasaki. Almost immediately, the parties
quarrelled over the inclusion of older model vehicles in the initial inventory and the hourly rate
for warranty work. Later, other disagreements developed concerning unauthorized "drop-shipments" of motorcycles and multiple-unit inventory purchasing requirements.

 D.K.D. soon developed financial troubles. By late summer of 1987, D.K.D. had
defaulted on its floorplan financing, had failed to make payments for vehicles sold, and had given
Kawasaki several "hot" checks. On August 26, 1987, representatives of Kawasaki appeared at
D.K.D.'s place of business and effected a self-help repossession of the motorcycle inventory. 
Kawasaki's representatives also removed the leased computer system and the dealership files. 
Kawasaki canceled D.K.D.'s unfilled parts orders, and Kawasaki's representatives allegedly
instructed D.K.D. that it could no longer submit orders or warranty work claims to Kawasaki.

 D.K.D. initiated the underlying action with the Texas Motor Vehicle Commission
as an administrative-complaint proceeding. D.K.D. complained that the actions taken by
Kawasaki constituted a wrongful termination of D.K.D.'s franchise under section 5.02(3) of the
Texas Motor Vehicle Commission Code ("the Code"). (1) Act of May 20, 1987, 70th Leg., R.S.,
ch. 357, sec. 24, § 5.02(3), 1987 Tex. Gen. Laws 1781, 1789 (Tex. Rev. Civ. Stat. Ann. art.
4413(36), § 5.02(3), since amended). D.K.D. also complained that (1) Kawasaki had failed to
repurchase vehicles, parts, and advertising signs upon termination as required under section
5.02(14); (2) (2) Kawasaki had required D.K.D. to accept delivery of unordered vehicles in violation
of section 5.02(1); (3) (3) Kawasaki had failed to deliver reasonable quantities of motorcycle
inventories in violation of section 5.02(2); (4) and (4) Kawasaki had failed to fully compensate
D.K.D. for warranty work in violation of section 5.02(9). (5)

 After a two-day hearing, the hearings examiner found that Kawasaki had violated
the Code and recommended that civil penalties and damages be awarded. The Commission
adopted the findings and conclusions of the hearings examiner and issued a final order against
Kawasaki for (1) $22,000.00 in civil penalties for violations of the Code; (2) $684.64 in damages
to D.K.D. for warranty work performed but not compensated; (3) $51,895.71 in damages to
D.K.D. for claims under section 5.02(14); and (4) the cost of the transcript of the hearing.

 After exhausting its administrative remedies, Kawasaki brought this action for
judicial review under section 19 of the Administrative Procedure and Texas Register Act, Tex.
Rev. Civ. Stat. Ann. art. 6252-13a (West Supp. 1992) ("APTRA"), by filing its original petition
in the district court of Travis County. The district court upheld the order of the Commission, and
Kawasaki appeals the district court's judgment.



DISCUSSION AND HOLDING


Inventory, Shipment and Warranty Work Complaints


 Kawasaki's third and fourth points of error turn on the same standards of review;
therefore, we will discuss them together. The Commission found that Kawasaki required D.K.D.
to accept undesired merchandise as its initial inventory, required D.K.D. to accept undesirable
merchandise to obtain the more popular vehicles, and delivered unordered vehicles to D.K.D. 
Kawasaki challenges the Commission's resulting conclusions that Kawasaki violated sections
5.02(1) and (2) and the associated assessment of civil penalties as arbitrary and capricious and not
supported by substantial evidence. 

 Kawasaki also challenges the Commission's finding that Kawasaki failed to pay for
warranty work as required by section 5.02(9) and the Commission's related assessment of civil
penalties as not supported by substantial evidence and as an unwarranted exercise of discretion.

 To determine whether an agency's action is arbitrary and capricious, we generally
need only determine whether its actions are supported by substantial evidence, for an agency's
actions are generally considered arbitrary and capricious under APTRA § 19(e)(6) if they are not
supported by substantial evidence. Texas Health Facilities Comm'n v. Charter Medical-Dallas,
Inc., 665 S.W.2d 446, 454 (Tex. 1984).

 This Court extensively discussed the substantial evidence test in Lone Star Salt
Water Disposal Co. v. Railroad Commission of Texas:



 To determine whether an agency's decision is supported by substantial
evidence, as APTRA § 19(e)(5) requires, we must determine whether, in
considering the record upon which the decision is based, the evidence as a whole
is such that reasonable minds could have reached the conclusion which the
Commission must have reached in order to justify its action. In determining
whether there is substantial evidence to support the order, the reviewing court may
not substitute its judgment for the Commission's, and must consider only the
record upon which the decision is based. The evidence in the agency record may
actually preponderate against the Commission's decision, but still amount to
substantial evidence supporting it. The burden is on the complaining party to
demonstrate an absence of substantial evidence.


 Final orders of the Commission are presumed to be valid. Where the
evidence in the record before an agency will support either an affirmative or a
negative finding, the agency order must be upheld. Any conflict in the evidence
must be resolved in favor of the agency's decision. 



Lone Star Salt Water Disposal Co. v, Railroad Comm'n, 800 S.W.2d 924, 928 (Tex. App.--Austin
1990, no writ) (citations omitted).

 In some instances, an agency decision which is supported by substantial evidence
is nonetheless arbitrary and capricious. To determine whether an agency action is the type of
arbitrary conduct that violates APTRA, even though supported by substantial evidence, we must
ascertain whether (1) the agency denied a litigant due process, Lewis v. Metropolitan Sav. & Loan
Ass'n, 550 S.W.2d 11, 16 (Tex. 1977); (2) the agency completely failed to make findings of fact
and instead based its decision on findings in another case, Railroad Comm'n v. Alamo Express,
308 S.W.2d 843, 846 (Tex. 1958); (3) the agency improperly based its decision on non-statutory
criteria, Public Util. Comm'n v. South Plains Elec. Coop., Inc., 635 S.W.2d 954, 957 (Tex.
App.-- Austin 1982, writ ref'd n.r.e.); or (4) the agency abused its discretion by basing its decision
on legally irrelevant factors, or by failing to consider legally relevant factors. Consumers Water,
Inc. v. Public Util. Comm'n, 774 S.W.2d 719, 721 (Tex. App.--Austin 1989, no writ); Starr
County v. Starr Indus. Servs., Inc., 584 S.W.2d 352, 355-56 (Tex. Civ. App.--Austin 1979, writ
ref'd n.r.e.).

 Another court of appeals has suggested an additional hurdle for demonstrating a
violation of the arbitrary and capricious standard--for a finding, which is supported by substantial
evidence, to be arbitrary and capricious, it must be based on a violation of due process or some
other unfair or unreasonable conduct that shocks the conscience. Texas State Bd. of Dental
Examiners v. Silagi, 766 S.W.2d 280, 285 (Tex. App.--El Paso 1989, writ denied).

 Upon examination of the record, we conclude that substantial evidence exists to
support the Commission's findings. While the record contains conflicting evidence concerning
the violations of sections 5.02(1), (2) and (9), reasonable minds could have reached the conclusion
that the Commission reached and we will not substitute our judgment for that of the Commission. 
Additionally, we conclude that the Commission's findings were not arbitrary and capricious. We
overrule Kawasaki's third and fourth points of error.



Termination Without Statutory Notice


 In its first point of error, Kawasaki challenges the Commission's finding that
Kawasaki terminated D.K.D.'s franchise without 60-days written notice, as section 5.02(3)
requires. To support this argument Kawasaki urges two theories--that the Commission exceeded
its statutory and constitutional authority and that the Commission misconstrued the Code.

 Under its first argument, Kawasaki contends that it was merely exercising its rights
as a secured creditor, that its actions did not terminate D.K.D.'s franchise, and that its actions
were proper under article 9 of the Uniform Commercial Code, Tex. Bus. & Com. Code Ann.
§§ 9.101-.507 (West 1991). Kawasaki contends that the Commission's order limits the valid
exercise of its right as a secured creditor to protect its interests, and, therefore, was outside the
Commission's statutory authority. Kawasaki interprets the Commission's decision to imply that
a franchisor-secured creditor could not repossess collateral without first giving the franchisee-debtor 60-days written notice. Such a requirement, Kawasaki argues, would impair the creditor's
contractual security interest and, thus, would violate the creditor's substantive and procedural due-process rights and the constitutional prohibition of impairment of contracts. See Tex. Const. art.
I, § 16.

 We decline to interpret the Commission's order or its implications so broadly. We
conclude that the Commission based its finding of de facto termination not merely on Kawasaki's
repossession of the motorcycles, but on the totality of Kawasaki's actions. The hearings examiner
stated in his proposal for decision "that an effective termination took place on August 26, 1987
when Kawasaki repossessed the Complainant's inventory of motorcycles, computer terminal, and
records" and that "the facts presented in this case show more than just a repossession having
occurred and it is these additional elements that make up a finding of wrongful termination." The
hearings examiner expressly limited his proposal to "not . . . imply that a creditor may not
repossess secured property when circumstances warrant." Kawasaki undertook more than a self-help repossession; it seized D.K.D.'s dealership files, it repossessed the leased computer although
the record reflected no default under the lease agreement, it canceled unfilled parts orders, and
it instructed D.K.D. not to place orders or submit warranty-work claims. We conclude that the
Commission's order did not exceed its statutory authority or conflict with Kawasaki's rights as
a secured creditor.

 In its second argument, Kawasaki contends that the Commission failed to recognize
that Kawasaki had not terminated D.K.D.'s right to sell Kawasaki products at the time of the
repossession, and therefore, misconstrued the Code. Kawasaki refers to the definition of
"franchise" in section 1.03(8), which describes a franchise, in part, as a contractual right to sell
a product. (6) Kawasaki argues that since D.K.D. retained the right to sell Kawasaki products after
the repossession and since no "contracts" were terminated, the franchise, as defined by the Code,
still existed. We disagree. As stated above, the Commission found that there was a de facto
termination of the franchise. This finding was based on the totality of Kawasaki's actions and did
not depend on a formal cancellation of D.K.D.'s intangible right to sell Kawasaki products or the
termination of a contract.

 Kawasaki also argues that this finding was not supported by substantial evidence. 
Kawasaki concedes that, in addition to repossession of the motorcycles, it seized the computer
system and the dealership files and canceled all unfilled parts orders. While there is conflicting
evidence on the representations Kawasaki's agents made concerning D.K.D.'s right to order on
cash and to submit warranty-work claims, we will not substitute our judgment on the weight to
be given the evidence for that of the Commission. Based upon the above-stated standards, we
conclude that substantial evidence exists to support the Commission's finding that a de facto
termination occurred.

 We conclude, under the facts of this case, that the Commission did not exceed its
statutory or constitutional authority in finding that Kawasaki's actions constituted a termination
of D.K.D.'s franchise without the 60-days written notice section 5.02(3) requires and in imposing
civil penalties for this violation of the Code. Accordingly, we overrule Kawasaki's first point of
error.



Agency Adjudication of Private Claims


 In its second point of error, Kawasaki contends that the trial court erred in failing
to determine that the Commission exceeded its statutory and constitutional authority in
adjudicating D.K.D.'s claims under section 5.02(14). See APTRA § 19(e)(2). Kawasaki asserts
that these claims for payment of parts, accessories, and signs are contract claims that the
Commission has no authority to adjudicate. The Commission determined that Kawasaki had not
made the payments, as the Code required, and ordered the company to pay D.K.D. the amount
of $51,895.71.

 The relevant version of section 5.02(14) provides that it is unlawful for a
manufacturer to fail to pay the dealer, upon termination of the franchise, for unsold new motor
vehicles, parts, accessories, signs, special tools and service equipment, and the costs of the
repurchase. A manufacturer that fails to make such payments within six months of termination
is liable for "the greatest of dealer cost, fair market value, or current price of the inventory,"
interest, attorney's fees, and costs. Act of May 20, 1987, 70th Leg., R.S., ch. 357, sec. 24,
§ 5.02(14), 1987 Tex. Gen. Laws, 1781, 1790-91 (Tex. Rev. Civ. Stat. Ann. art. 4413(36),
§ 5.02(14), since amended, current version at § 5.02(16)). Kawasaki argues that neither this
section nor other Code provisions grant the Commission authority to order payment to the dealer. 
We agree.

 Kawasaki first argues that the Code does not grant the Commission authority to
order payments under section 5.02(14). Second, even if the Commission had that authority,
Kawasaki asserts that the adjudication of these private claims is left to the courts and that the
Commission's adjudication of private claims violates the doctrine of separation of powers. See
Tex. Const. art. II, § 1 & art. V, § 1. 

 An agency may exercise only those specific powers that the law confers upon it in
clear and express language. As a general rule, the legislature impliedly intends that an agency
should have whatever power is reasonably necessary to fulfill a function or perform a duty that
the legislature has expressly place in the agency. Texas Dep't of Human Servs. v. Christian Care
Ctrs., Inc., 826 S.W.2d 715, 719 (Tex. App.--Austin 1992, writ denied); Sexton v. Mount Olivet
Cemetery Ass'n, 720 S.W.2d 129, 137-38 (Tex. App.--Austin 1986, writ ref'd n.r.e.). Here,
Kawasaki argues that the remedy the Commission ordered is not within the agency's authority. 


 The Commission replies that the Legislature has either expressly or impliedly
authorized the Commission to adjudicate claims under section 5.02(14). The Commission argues
that the grant of powers contained in sections 3.01 and 3.03 of the Code constitutes specific
statutory authority to adjudicate section 5.02(14) claims. (7) Alternatively, the Commission argues
that the power to adjudicate these claims is implied by the Commission's duties to administer the
Code provisions and to insure that the distribution and sale of motor vehicles is conducted in
compliance with the Code. The Commission further argues that the issues adjudicated under
section 5.02(14) concerned rights created by statute rather than common-law rights and, thus,
could be properly delegated to an agency without violation of separation of powers principles.

 The legislature has expressly provided mechanisms by which the Commission may
enforce violations of Code provisions. Pursuant to section 6.01, the Commission may assess a
civil penalty against a person who the Commission finds has violated the Code. (8) Pursuant to
section 6.01A, the Commission may also issue a cease and desist order to stop ongoing violations
of the Code. (9) The Legislature has not, however, expressly granted the Commission authority to
order a distributor to pay the dealer amounts owed pursuant to section 5.02(14). (10) 

 In the immediate case, the statute contains only general grants of authority and does
not provide a procedure to compel compliance with section 5.02(14). (11) This Court has previously
discussed the general authority of administrative agencies:



It is axiomatic that such agencies are creatures of statute and have no inherent
authority. They may, therefore, exercise only those specific powers conferred
upon them by law in clear and express language, and no additional authority will
be implied by judicial construction. However, with respect to a power specifically
granted the agency, the full extent of that power must be ascertained with due
regard for the rule that the Legislature generally intends that an agency should have
by implication such authority as may be necessary to carry out the specific power
delegated, in order that the statutory purpose might be achieved. Moreover, the
Legislature impliedly intends, as a general rule, that an agency should have
whatever power is necessary to fulfill a function or perform a duty placed
expressly in the agency by the Legislature. The Legislature does not intend that
agency functions be an exercise in futility. . . .


 The agency may not, however, on a theory of necessary implication from
a specific power, function, or duty expressly delegated, erect and exercise what
really amounts to a new and additional power or one that contradicts the statute,
no matter that the new power is viewed as being expedient for administrative
purposes.



Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 137-38 (Tex. App.--Austin 1986, writ
ref'd n.r.e.) (emphasis in original) (citations omitted); see also Texas Dep't of Human Servs. v.
Christian Care Ctrs., Inc., 826 S.W.2d 715, 719-20 (Tex. App.--Austin 1992, writ denied). We
conclude that the grant of powers to the Commission in sections 3.01 and 3.03 is general in nature
and does not convey the express power to order payments to dealers pursuant to section 5.02(14)
in Commission proceedings. We now must examine whether these sections imply such a power. 
The actions of the Commission in ordering Kawasaki to make payments to D.K.D. can be
described as enforcement or adjudicatory in nature.

 Generally, enforcement powers cannot be implied. Harrington v. Railroad
Comm'n, 375 S.W.2d 892, 894-95 (Tex. 1964); Public Util. Comm'n v. Houston Lighting &
Power Co., 715 S.W.2d 98, 103 (Tex. App.--Austin 1986), modified on other grounds, 748
S.W.2d 434 (Tex. 1988), appeal dism'd, 488 U.S. 805 (1988) (absent express authority
Commission had no implied power to impose a rate-of-return penalty for utility mismanagement);
but see City of Brownsville v. Public Util. Comm'n, 616 S.W.2d 402, 408 (Tex. Civ.
App.--Texarkana 1981, writ ref'd n.r.e); Gluck v. Texas Animal Health Comm'n, 501 S.W.2d 412,
414-15 (Tex. Civ. App.--San Antonio 1973, writ ref'd n.r.e.). The courts have also declined to
imply the power to adjudicate private claims. Absent statutory authority, the Railroad
Commission has not been allowed to adjudicate contractual rights of individuals or title to land. 
See Trapp v. Shell Oil Co., 198 S.W.2d 424, 437 (Tex. 1946); Railroad Comm'n v. Rau, 45
S.W.2d 413, 416 (Tex. Civ. App.--Austin 1931, writ dism'd).

 We believe that the adjudication of claims under section 5.02(14) is not necessary
either to carry out any specific power granted the Commission, or to fulfill any function or duty
expressly imposed on the Commission. Absent an express delegation by the Legislature, we
decline to imply such a power. The Commission clearly could make a finding of violations of
section 5.02(14) and impose civil penalties for such violations pursuant to section 6.01. However,
it could not adjudicate the private dispute between Kawasaki and D.K.D. We conclude that the
Legislature did not expressly or impliedly grant to the Commission the power to adjudicate claims
between franchisors and franchisees under section 5.02(14) or to enforce that section by ordering
payment by the franchisor to the franchisee. Therefore, we sustain Kawasaki's second point of
error.

 Having reversed the trial court's judgment as to the section 5.02(14) claims for the
above reasons, we do not reach Kawasaki's remaining arguments under this point.



CONCLUSION


 We reverse the district court's judgment and render judgment that the proceeding
be remanded to the Commission for further proceedings consistent with this opinion.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Reversed and Rendered

Filed: May 5, 1993

[Publish]

1.   References to section numbers shall be to the Texas Motor Vehicle Commission
Code, unless otherwise noted.
2.   Act of May 20, 1987, 70th Leg., R.S., ch. 357, sec. 24, § 5.02(14), 1987 Tex. Gen.
Laws, 1781, 1790-91 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(14), since amended,
current version at § 5.02(16)).
3.   Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(1) (West Supp. 1992).
4.   Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(2) (West Supp. 1992).
5.   Act of May 20, 1987, 70th Leg., R.S., ch. 357, sec. 24, § 5.02(9), 1987 Tex. Gen.
Laws, 1781, 1790 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02(9), since amended,
current version at § 5.02(11)).
6.   The applicable version of section 1.03(8) provides: "Franchise" means one or more
contracts under which (A) the franchisee is granted the right to sell new motor vehicles
manufactured or distributed by the franchisor; (B) the franchisee as an independent
business is a component of the franchisor's distribution system; (C) the franchisee is
substantially associated with the franchisor's trademark, tradename and commercial
symbol; (D) the franchisee's business is substantially reliant on franchisor for a continued
supply of motor vehicles, parts, and accessories for the conduct of its business; or (E) any
right, duty, or obligation granted or imposed by this Act is affected. Act of March 19,
1977, 65th Leg., R.S., ch. 351, sec. 1, § 1.03(8), 1977 Tex. Gen. Laws 947 (Tex. Rev.
Civ. Stat. Ann. art 4413(36), § 1.03(8), since amended).
7.   The applicable version of section 3.01 states in part: "The Commission shall
administer the provisions of this Act . . . and insure that the distribution and sale of
motor vehicles is conducted as provided herein and under the Commission's rules. The
Commission has the powers and duties specifically prescribed in this Act and all other
powers necessary and convenient to carry out its responsibilities." Act of May 20, 1987,
70th Leg., R.S., ch. 357, sec. 11, § 3.01, 1987 Tex. Gen. Laws 1781, 1784 (Tex. Rev. Civ.
Stat. Ann. art. 4413(36), § 3.01, since amended).


 The applicable version of section 3.03 states in part: "The Commission is
authorized to issue orders and make determinations as may be necessary to carry out this
Act . . . ." Act of May 25, 1971, 62d Leg., R.S., ch. 51, sec. 1, § 3.03, 1971 Tex. Gen.
Laws 89, 92 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 3.03, since amended). 
8.   Act of May 15, 1985, 69th Leg., R.S., ch. 241, sec. 7, § 6.01, 1985 Tex. Gen. Laws
1215, 1218 (Tex. Rev. Civ. Stat. Ann. art 4413(36), § 6.01, since amended).
9.   [9]  Act of May 15, 1985, 69th Leg., R.S., ch. 24, sec. 8, § 6.01A, 1985 Tex. Gen. Laws
1215, 1218 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 6.01A, since amended). 
10.   We contrast the absence of authority to order payments in section 5.02(14) with the
specific authority to order payments in section 6.07(g) of the so-called "lemon law." See
Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 6.07(g) (West Supp. 1983). 
11.   A person who sustains actual damages as a result of a violation of section 5.02 may
bring an action pursuant to the Deceptive Trade Practices-Consumer Protection Act, Tex.
Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1992). Tex. Rev. Civ. Stat.
Ann. art. 4413(36), § 6.06 (West Supp. 1992).