TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00103-CV







Sportscoach Corporation of America, Inc. and Coachmen Industries, Inc.
, Appellants


v.



Eastex Camper Sales, Inc. and the Motor Vehicle Board and Motor Vehicle Division

of the Texas Department of Transportation, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-11943, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING






 Appellants Sportscoach Corporation of America, Inc. and Coachmen Industries,
Inc. (together "Sportscoach") appeal from a district-court judgment affirming a final order of
appellees the Motor Vehicle Board and Motor Vehicle Division of the Texas Department of
Transportation (together the "Board"), which found that Sportscoach violated the Motor Vehicle
Commission Code (the "Code")(1) and ordered Sportscoach to pay appellee Eastex Camper Sales,
Inc. ("Eastex") $29,239.71 in damages. We will reverse the judgment in part and remand the
cause to the district court.


FACTUAL AND PROCEDURAL BACKGROUND

 This dispute arises out of a franchise relationship between Sportscoach and Eastex. 
Sportscoach manufactures recreational vehicles. In 1990, Eastex entered into several franchise
agreements to sell Sportscoach vehicles at its Humble motor-vehicle dealership. In the spring of
1991, Eastex terminated the franchise agreements. Pursuant to a 30-day notice provision, the
termination became final on June 15, 1991. At the time of termination, Eastex had four 1990
model-year vehicles manufactured by Sportscoach in its inventory.

 Eastex demanded that Sportscoach repurchase the four vehicles in accordance with
section 5.02(b)(16) of the Code, which requires a manufacturer to repurchase, from a terminated
dealer, all current model-year vehicles and all immediately prior model-year vehicles in the
dealer's inventory at the time of franchise termination.(2) Sportscoach refused, claiming that the
1992 model year began before the June 15, 1991 termination date. According to Sportscoach, the
1990 vehicles were not immediately prior model-year vehicles and therefore not covered by the
Code's repurchase obligation. Eastex sought to mitigate its damages by selling all four vehicles. 
Three were sold for a profit; one, a Pathfinder model, was sold for a loss of $7,847.60.

 Eastex filed a complaint with the Board seeking all damages stemming from
Sportscoach's alleged violation of section 5.02(b)(16) of the Code. See Tex. Rev. Civ. Stat. Ann.
art. 4413(36) §§ 2.12, 3.05(a) (West Supp. 2000). The complaint was heard by an administrative
law judge ("ALJ") who issued a proposal for decision. See id. § 3.08(a), (g). The Board rejected
the ALJ's proposal on grounds unrelated to this appeal. See id. § 3.08(g). After a second
hearing, the ALJ issued a new proposal for decision recommending that the Board award Eastex
actual damages, attorney's fees, costs, and interest. On July 9, 1998, the Board rendered a final
order adopting the ALJ's second proposal for decision with minor modifications. See id.
§ 3.08(g). The Board ordered Sportscoach to pay Eastex (1) $7,847.60 in dealer costs; (2)
$12,192.11 in attorney's fees; (3) $200 in filing fees; and (4) interest.

 Sportscoach then sought judicial review in district court. See id. § 7.01 ("Any party
to a proceeding before the [B]oard that is affected by a final order . . . of the [B]oard is entitled
to judicial review of any such final [B]oard action, under the substantial evidence rule . . . ."). 
Eastex counterclaimed asking the district court to "confirm" the Board's order and "render
judgment awarding Eastex all relief granted under [the order]." Eastex further asserted that the
Board's findings and conclusions established that Sportscoach had violated the Deceptive Trade
Practices Act (the "DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp.
2000), and sought damages against Sportscoach for such violations. Finally, Eastex's
counterclaim requested attorney's fees and interest. The district court severed Eastex's DTPA
counterclaim and affirmed the order of the Board, resulting in a final appealable judgment with
regard to Sportscoach's administrative appeal. By three issues, Sportscoach appeals the district
court's judgment.


DISCUSSION

Substantial-Evidence Review

 We will first address Sportscoach's third point of error. Sportscoach challenges
the Board's conclusion that it violated section 5.02(b)(16) of the Code on the ground the
conclusion is not supported by substantial evidence.(3) The district court reviews a final order of
the Board under the substantial-evidence rule. See Tex. Rev. Civ. Stat. Ann. art. 4413(36)
§ 7.01(a) (West Supp. 2000). The district court presumes that the Board's order is supported by
substantial evidence, and the appealing party, here Sportscoach, has the burden of overcoming this
presumption. See Meier Infiniti Co. v. Motor Vehicle Bd., 918 S.W.2d 95, 98 (Tex. App.--Austin
1996, writ denied). The district court determines whether the Board's findings were supported
by substantial, probative, reliable evidence found in the whole record such that reasonable minds
could have reached the conclusion that the Board must have reached to justify its action. See
Suburban Util. Corp. v. Public Util. Comm'n, 652 S.W.2d 358, 364 (Tex. 1983); Clear Creek
ISD v. Commissioner of Educ., 775 S.W.2d 490, 493 (Tex. App.--Austin 1989, no writ). The
true test is not whether the agency reached the correct conclusion but "whether some reasonable
basis exists in the record for the action taken by the [Board]." State v. Public Util. Comm'n, 883
S.W.2d 190, 203-04 (Tex. 1994); accord Meier, 918 S.W.2d at 98.

 Eastex posits that the 1992 Pathfinder model year did not begin until after June 15,
1991, and thus, 1991 Pathfinders were current model-year vehicles, and the 1990 Pathfinder was
an immediately prior model-year vehicle. Sportscoach argues that because a different Sportscoach
model, the 1992 Cross Country, was manufactured before June 15, 1991, the 1992 model year for
all Sportscoach models, including the Pathfinder, began before June 15, 1991; therefore, the 1990
Pathfinder is not subject to the statutory buyback requirement. See Tex. Rev. Civ. Stat. Ann. art.
4413(36) § 5.02(b)(16) (West Supp. 2000). However, the record reflects that Sportscoach was
unclear about its own model-year policy and when the policy took effect. Sportscoach did not
produce evidence at the administrative hearing definitively indicating when the policy was
implemented.

 The policy that Sportscoach claims to have been in effect in 1991 does not clearly
dictate that the model year changed for all types of vehicles when the first 1992 model of any
vehicle was manufactured by Sportscoach. The Board applied a reasonable interpretation of that
policy. The Board ruled that a change in model year is unique to each model of vehicle and begins
when the first vehicle of that model is manufactured. Thus, the 1992 Pathfinder model year could
not start until the first 1992 Pathfinder was manufactured. Sportscoach does not dispute that
manufacture of 1992 Pathfinders did not commence before June 15, 1991. The record reflects
reliable evidence to support the Board's conclusion that the Pathfinder's 1992 model year had not
begun by June 15, 1991. Sportscoach's third point of error is accordingly overruled.


Agency Adjudication of Private Claims

 By its first point of error,(4) Sportscoach contends that the district court erred in
failing to determine that the Board acted "in excess of [its] statutory authority" when it adjudicated
Eastex's claims under section 5.02(b)(16). See Tex. Rev. Civ. Stat. Ann. art. 4413(36)
§ 5.02(b)(16) (West Supp. 2000). Sportscoach asserts that the Board had no power to assume "the
role of a court and proceed to adjudicate Eastex's claim against [Sportscoach] for damages."

 Section 5.02(b)(16) provides that it is unlawful for a manufacturer to fail to pay a
dealer, upon termination of the dealer's franchise, for unsold new motor vehicles of the current
model year or of the immediately prior model year in the dealer's inventory. See id. A
manufacturer that fails to make such payments within sixty days of termination is liable for "the
greatest of dealer costs, fair market value, or current price of the inventory," interest, attorney's
fees, and costs. Id. § 5.02(b)(16)(F). Sportscoach argues that neither this section nor other Code
provisions grant the Board authority to order payment to the dealer. We agree.

 An agency may exercise only those specific powers that the legislature confers upon
it in clear and express language. Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Comm'n,
855 S.W.2d 792, 797 (Tex. App.--Austin 1993, no writ). As a general rule, one may imply that
the legislature intends that an agency should have whatever power is reasonably necessary to fulfill
a function or perform a duty that the legislature has expressly placed in the agency. Id.; see also
Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc., 826 S.W.2d 715, 719 (Tex.
App.--Austin 1992, writ denied); Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 137-38 (Tex. App.--Austin 1986, writ ref'd n.r.e.).

 In support of its position that the remedy ordered by the Board is not within the
agency's authority, Sportscoach directs us to our decision in Kawasaki Motors, 855 S.W.2d at
792. Kawasaki Motors involved a similar challenge to the power of the predecessor of the Board,
the Motor Vehicle Commission.(5) This Court held that the language at issue did not grant the
Motor Vehicle Commission authority to order payments to a private party.(6) See Kawasaki Motors,
855 S.W.2d at 797. However, the legislature amended the Code in 1989 to provide the language
we now analyze. See Act of May 18, 1989, 71st Leg., R.S., ch. 1130, §§ 9, 11, 24, 1989 Tex.
Gen. Laws 4653, 4657, 4658, 4665 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), since amended).

 The Board and Eastex argue that the amended sections of the Code confer on the
Board the authority to adjudicate third-party claims. See Tex. Rev. Civ. Stat. Ann. art. 4413(36)
§§ 3.01, 3.03 (West Supp. 2000). They assert that the grant of powers contained in sections 3.01
and 3.03 constitutes specific statutory authority to adjudicate section 5.02(b)(16) claims. We
disagree.

 Although the legislature amended sections 3.01 and 3.03, it did not give the Board
the power to adjudicate private claims or grant the Board authority to order a manufacturer to pay
a dealer amounts owed for violations of the Code:


The [Board] shall have and may, in its discretion and notwithstanding any other
provision of law that is inconsistent with this Act, exercise the powers set forth in
this Act, and shall have all other powers necessary, incidental, or convenient to
carry out its duties and effectuate its express powers and duties. These powers and
duties include the power to initiate and conduct proceedings, investigations, and
hearings, administer oaths, receive evidence and pleadings, issue subpoenas to
compel the attendance of any person, order the production of any tangible property,
including papers, records, and documents, make findings of fact on all factual
issues arising out of any proceeding initiated under this Act, specify, govern, and
control appearance, practice, and procedure before the [Board], issue rules,
conclusions of law, decisions, including declaratory decisions or orders, enter into
contracts or execute instruments, retain counsel, utilize the services of the Attorney
General of the State of Texas and thereafter institute and direct the conduct of legal
proceedings in any forum or obtain other professional services as may be necessary
and convenient, sanction for contempt, assess and collect fees and costs including
attorney's fees, issue, suspend, and revoke licenses, prohibit and regulate acts and
practices in connection with the distribution and sale of motor vehicles and
warranty performance obligations, issue cease and desist orders in the nature of
temporary and permanent injunctions, and levy civil penalties.



Id. § 3.03 (emphasis added). Indeed, although the legislature expanded the powers of the Board
in 1989, it did not grant the Board power to assess damages on behalf of, and order such damages
paid to, a private party.(7)

 We contrast the absence of authority to order payments in section 5.02(b)(16) with
the specific authority to order reimbursement in section 6.07(g) of the Code. See id. § 6.07(g);
Kawasaki Motors, 855 S.W.2d at 798 n.10. In Kawasaki Motors, we noted that the legislature
has expressly provided, in other sections of the Code, by what means the Board may enforce Code
violations. See Kawasaki Motors, 855 S.W.2d at 798. The Code's enforcement sections
specifically grant the Board the power to assess a civil penalty,(8) issue a cease and desist order,(9)
and issue an injunction;(10) the enforcement sections, however, do not empower the Board to order
that damages be paid to a private party.

 Eastex and the Board argue that the Board's statutory authorization to assess and
collect costs gives it the power to assess a "cost" in the form of Eastex's damages resulting from
Sportscoach's violation of the Code and to award that "cost" to Eastex. See Tex. Rev. Civ. Stat.
Ann. art. 4413(36) § 3.03 (West Supp. 2000). However, such an application would ignore the
logical meaning of that language--that the power to assess costs means the power to assess and
collect costs for the Board itself, not on a private entity's behalf. This interpretation is supported
by section 6.01(a), which directs that civil penalties collected by the Board are payable into the
state's highway fund. See id. § 6.01(a). Here the Board did not collect any costs or penalties to
be deposited to any state fund. Instead it overstepped its authority and ordered Sportscoach to
make direct payment to Eastex for damages resulting from a Code violation.

 Having determined that the legislature did not grant the Board the authority urged
by the Board and Eastex, we sustain Sportscoach's first point of error.


CONCLUSION

 We affirm the district court's judgment insofar as it holds that there is substantial
evidence to support the Board's conclusion that Sportscoach violated the Code. We reverse the
remainder of the judgment and remand that portion of the cause to the district court for further
proceedings consistent with this opinion.



 

 Lee Yeakel, Justice

Before Justices Jones, Kidd and Yeakel 

Affirmed in Part; Reversed and Remanded in Part

Filed: October 19, 2000

Publish


1. Tex. Rev. Civ. Stat. Ann. art. 4413(36) (West Supp. 2000).
2. Section 5.02(b) provides:


It is unlawful for any manufacturer, distributor, or representative to:

 . . . .


(16) Notwithstanding the terms of any franchise agreement, fail to pay to a dealer or
any lienholder in accordance with their respective interest after the termination
of a franchise:


 (A) the dealer cost of each new motor vehicle in the dealer's inventory with
mileage of 6,000 miles or less, reduced by the net discount value of each,
where "net discount value" is determined according to the following
formula: net cost multiplied by total mileage divided by 100,000, and
where "net cost" equals the dealer cost plus any charges by the
manufacturer, distributor, or representative for distribution, delivery, and
taxes, less all allowances paid to the dealer by the manufacturer,
distributor, or representative for new, unsold, undamaged, and complete
motor vehicles of current model year or one year prior model year in the
dealer's inventory, except that if a vehicle cannot be reduced by the net
discount value, the manufacturer or distributor shall pay the dealer the net
cost of the vehicle;

 . . . . 


 (F) except as provided by this subdivision, any sums due as provided by
Paragraph (A) of this subdivision within 60 days after termination of a
franchise . . . . A manufacturer, distributor, or representative who fails to
pay those sums within the prescribed time or at such time as the dealer and
lienholder, if any, proffer good title prior to the prescribed time for
payment, is liable to the dealer for:


 (i) the greatest of dealer cost, fair market value, or current price of the
inventory;


 (ii) interest on the amount due calculated at the rate applicable to a
judgment of a court; and 


 (iii) reasonable attorney's fees and costs.


Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 5.02(b)(16)(A), (F) (West Supp. 2000). 
3. Conclusion number three states, "Sportscoach . . . [was] required to repurchase the
motorhomes within 60 days of the date of termination as required by Texas Motor Vehicle
Commission Code § 5.02[(b)](16)."
4. Sportscoach's second point of error draws attention to the failure of the district court to hold
that the 1989 legislative changes to the Code did not overrule Kawasaki Motors Corp. U.S.A. v.
Texas Motor Vehicle Commission, 855 S.W.2d 792 (Tex. App.--Austin 1993, no writ). Because
Sportscoach's second point of error is closely related to its first point of error and is not
dispositive, we need not separately address it. See Tex. R. App. P. 47.1.
5. See Act of August 10, 1991, 72d Leg., C.S., ch. 7, § 1A.03, 1991 Tex. Gen. Laws 226,
238 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), since amended). 
6. The relevant statute at issue in Kawasaki Motors was article 4413(36) of the revised civil
statutes. Rev. Civ. Stat. Ann. art. 4413(36), amended by Act of May 18, 1989, 71st Leg., R.S.,
ch. 1130, § 24, 1989 Tex. Gen. Laws 4653, 4665.
7. Compare the 1987 version of the Code, applied in Kawasaki Motors:


The Commission is authorized to issue orders and make determinations as may be
necessary to carry out this Act. The orders shall set forth the findings on which the
order is based and the reason for the particular action taken. All orders shall be signed
by the chairman or vice-chairman and attested by the executive director and have the
seal affixed.


Act of March 25, 1971, 62d Leg., R.S., ch. 51, § 1, 1971 Tex. Gen. Laws 92 (current version
at Tex. Rev. Civ. Stat. Ann. art. 4413(36) (West Supp. 2000)).
8. Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 6.01(a) (West Supp. 2000).
9. Id. § 6.01A(a). 
10. Id. § 6.02.


tscoach violated the Code. We reverse the
remainder of the judgment and remand that portion of the cause to the district court for further
proceedings consistent with this opinion.



 

 Lee Yeakel, Justice

Before Justices Jones, Kidd and Yeakel 

Affirmed in Part; Reversed and Remanded in Part

Filed: October 19, 2000

Publish


1. Tex. Rev. Civ. Stat. Ann. art. 4413(36) (West Supp. 2000).
2. Section 5.02(b) provides:


It is unlawful for any manufacturer, distributor, or representative to:

 . . . .


(16) Notwithstanding the terms of any franchise agreement, fail to pay to a dealer or
any lienholder in accordance with their respective interest after the termination
of a franchise:


 (A) the dealer cost of each new motor vehicle in the dealer's inventory with
mileage of 6,000 miles or less, reduced by the net discount value of each,
where "net discount value" is determined according to the following
formula: net cost multiplied by total mileage divided by 100,000, and
where "net cost" equals the dealer cost plus any charges by the
manufacturer, distributor, or representative for distribution, delivery, and
taxes, less all allowances paid to the dealer by the manufacturer,
distributor, or representative for new, unsold, undamaged, and complete
motor vehicles of current model year or one year prior model year in the
dealer's inventory, except that if a vehicle cannot be reduced by the net
discount value, the manufacturer or distributor shall pay the dealer the net
cost of the vehicle;

 . . . . 


 (F) except as provided by this subdivision, any sums due as provided by
Paragraph (A) of this subdivision within 60 days after termination of a
franchise . . . . A manufacturer, distributor, or representative who fails to
pay those sums within the prescribed time or at such time as the dealer and
lienholder, if any, proffer good title prior to the prescribed time for
payment, is liable to the dealer for:


 (i) the greatest of dealer cost, fair market value, or current price of the
inventory;


 (ii) interest on the amount due calculated at the rate applicable to a
judgment of a court; and 


 (iii) reasonable attorney's fees and costs.


Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 5.02(b)(16)(A), (F) (West Supp. 2000). 
3. Conclusion number three states, "Sportscoach . . . [was] required to repurchase the
motorhomes within 60 days of the date of termination as required by Texas Motor Vehicle
Commission Code § 5.02[(b)](16)."
4. Sportscoach's second point of error draws attention to the failure of the district court to hold
that the 1989 legislative changes to the Code did not overrule Kawa