# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00103-CV

**Sportscoach Corporation of America, Inc. and Coachmen Industries, Inc., Appellants**

**v.**

**Eastex Camper Sales, Inc. and the Motor Vehicle Board and Motor Vehicle Division of the Texas Department of Transportation, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. 98-11943, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING

Appellants Sportscoach Corporation of America, Inc. and Coachmen Industries, Inc. (together "Sportscoach") appeal from a district-court judgment affirming a final order of appellees the Motor Vehicle Board and Motor Vehicle Division of the Texas Department of Transportation (together the "Board"), which found that Sportscoach violated the Motor Vehicle Commission Code (the "Code")[1] and ordered Sportscoach to pay appellee Eastex Camper Sales, Inc. ("Eastex") $29,239.71 in damages. We will reverse the judgment in part and remand the cause to the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises out of a franchise relationship between Sportscoach and Eastex. Sportscoach manufactures recreational vehicles. In 1990, Eastex entered into several franchise

---

[1] Tex. Rev. Civ. Stat. Ann. art. 4413(36) (West Supp. 2000).

agreements to sell Sportscoach vehicles at its Humble motor-vehicle dealership. In the spring of 1991, Eastex terminated the franchise agreements. Pursuant to a 30-day notice provision, the termination became final on June 15, 1991. At the time of termination, Eastex had four 1990 model-year vehicles manufactured by Sportscoach in its inventory.

Eastex demanded that Sportscoach repurchase the four vehicles in accordance with section 5.02(b)(16) of the Code, which requires a manufacturer to repurchase, from a terminated dealer, all current model-year vehicles and all immediately prior model-year vehicles in the dealer's inventory at the time of franchise termination.[2] Sportscoach refused, claiming that the 1992 model

[2] Section 5.02(b) provides:

It is unlawful for any manufacturer, distributor, or representative to:
  . . . .

(16) Notwithstanding the terms of any franchise agreement, fail to pay to a dealer or any lienholder in accordance with their respective interest after the termination of a franchise:

  (A) the dealer cost of each new motor vehicle in the dealer's inventory with mileage of 6,000 miles or less, reduced by the net discount value of each, where "net discount value" is determined according to the following formula: net cost multiplied by total mileage divided by 100,000, and where "net cost" equals the dealer cost plus any charges by the manufacturer, distributor, or representative for distribution, delivery, and taxes, less all allowances paid to the dealer by the manufacturer, distributor, or representative for new, unsold, undamaged, and complete motor vehicles of current model year or one year prior model year in the dealer's inventory, except that if a vehicle cannot be reduced by the net discount value, the manufacturer or distributor shall pay the dealer the net cost of the vehicle;
  . . . .

  (F) except as provided by this subdivision, any sums due as provided by Paragraph (A) of this subdivision within 60 days after termination of a franchise . . . . A manufacturer, distributor, or representative who fails to pay

2

year began before the June 15, 1991 termination date. According to Sportscoach, the 1990 vehicles were not immediately prior model-year vehicles and therefore not covered by the Code's repurchase obligation. Eastex sought to mitigate its damages by selling all four vehicles. Three were sold for a profit; one, a Pathfinder model, was sold for a loss of $7,847.60.

Eastex filed a complaint with the Board seeking all damages stemming from Sportscoach's alleged violation of section 5.02(b)(16) of the Code. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) §§ 2.12, 3.05(a) (West Supp. 2000). The complaint was heard by an administrative law judge ("ALJ") who issued a proposal for decision. *See id.* § 3.08(a), (g). The Board rejected the ALJ's proposal on grounds unrelated to this appeal. *See id.* § 3.08(g). After a second hearing, the ALJ issued a new proposal for decision recommending that the Board award Eastex actual damages, attorney's fees, costs, and interest. On July 9, 1998, the Board rendered a final order adopting the ALJ's second proposal for decision with minor modifications. *See id.* § 3.08(g). The Board ordered Sportscoach to pay Eastex (1) $7,847.60 in dealer costs; (2) $12,192.11 in attorney's fees; (3) $200 in filing fees; and (4) interest.

---

those sums within the prescribed time or at such time as the dealer and lienholder, if any, proffer good title prior to the prescribed time for payment, is liable to the dealer for:

  (i)   the greatest of dealer cost, fair market value, or current price of the inventory;

  (ii)  interest on the amount due calculated at the rate applicable to a judgment of a court; and

  (iii)  reasonable attorney's fees and costs.

Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 5.02(b)(16)(A), (F) (West Supp. 2000).

3

Sportscoach then sought judicial review in district court. *See id.* § 7.01 ("Any party to a proceeding before the [B]oard that is affected by a final order . . . of the [B]oard is entitled to judicial review of any such final [B]oard action, under the substantial evidence rule . . . ."). Eastex counterclaimed asking the district court to "confirm" the Board's order and "render judgment awarding Eastex all relief granted under [the order]." Eastex further asserted that the Board's findings and conclusions established that Sportscoach had violated the Deceptive Trade Practices Act (the "DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 2000), and sought damages against Sportscoach for such violations. Finally, Eastex's counterclaim requested attorney's fees and interest. The district court severed Eastex's DTPA counterclaim and affirmed the order of the Board, resulting in a final appealable judgment with regard to Sportscoach's administrative appeal. By three issues, Sportscoach appeals the district court's judgment.

## DISCUSSION

### *Substantial-Evidence Review*

We will first address Sportscoach's third point of error. Sportscoach challenges the Board's conclusion that it violated section 5.02(b)(16) of the Code on the ground the conclusion is not supported by substantial evidence.[3] The district court reviews a final order of the Board under the substantial-evidence rule. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 7.01(a) (West Supp. 2000). The district court presumes that the Board's order is supported by substantial evidence, and

---

[3] Conclusion number three states, "Sportscoach . . . [was] required to repurchase the motorhomes within 60 days of the date of termination as required by Texas Motor Vehicle Commission Code § 5.02[(b)](16)."

4

the appealing party, here Sportscoach, has the burden of overcoming this presumption. *See Meier Infiniti Co. v. Motor Vehicle Bd.*, 918 S.W.2d 95, 98 (Tex. App.—Austin 1996, writ denied). The district court determines whether the Board's findings were supported by substantial, probative, reliable evidence found in the whole record such that reasonable minds could have reached the conclusion that the Board must have reached to justify its action. *See Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 364 (Tex. 1983); *Clear Creek ISD v. Commissioner of Educ.*, 775 S.W.2d 490, 493 (Tex. App.—Austin 1989, no writ). The true test is not whether the agency reached the correct conclusion but "whether some reasonable basis exists in the record for the action taken by the [Board]." *State v. Public Util. Comm'n*, 883 S.W.2d 190, 203-04 (Tex. 1994); *accord Meier*, 918 S.W.2d at 98.

Eastex posits that the 1992 Pathfinder model year did not begin until after June 15, 1991, and thus, 1991 Pathfinders were current model-year vehicles, and the 1990 Pathfinder was an immediately prior model-year vehicle. Sportscoach argues that because a different Sportscoach model, the 1992 *Cross Country*, was manufactured before June 15, 1991, the 1992 model year for all Sportscoach models, including the *Pathfinder*, began before June 15, 1991; therefore, the 1990 Pathfinder is not subject to the statutory buyback requirement. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 5.02(b)(16) (West Supp. 2000). However, the record reflects that Sportscoach was unclear about its own model-year policy and when the policy took effect. Sportscoach did not produce evidence at the administrative hearing definitively indicating when the policy was implemented.

The policy that Sportscoach claims to have been in effect in 1991 does not clearly dictate that the model year changed for *all* types of vehicles when the first 1992 model of *any* vehicle was manufactured by Sportscoach. The Board applied a reasonable interpretation of that policy. The Board ruled that a change in model year is unique to each *model* of vehicle and begins when the first vehicle *of that model* is manufactured. Thus, the 1992 Pathfinder model year could not start until the first 1992 Pathfinder was manufactured. Sportscoach does not dispute that manufacture of 1992 Pathfinders did not commence before June 15, 1991. The record reflects reliable evidence to support the Board's conclusion that the Pathfinder's 1992 model year had not begun by June 15, 1991. Sportscoach's third point of error is accordingly overruled.

*Agency Adjudication of Private Claims*

By its first point of error,[4] Sportscoach contends that the district court erred in failing to determine that the Board acted "in excess of [its] statutory authority" when it adjudicated Eastex's claims under section 5.02(b)(16). *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 5.02(b)(16) (West Supp. 2000). Sportscoach asserts that the Board had no power to assume "the role of a court and proceed to adjudicate Eastex's claim against [Sportscoach] for damages."

Section 5.02(b)(16) provides that it is unlawful for a manufacturer to fail to pay a dealer, upon termination of the dealer's franchise, for unsold new motor vehicles of the current model

---

[4] Sportscoach's second point of error draws attention to the failure of the district court to hold that the 1989 legislative changes to the Code did not overrule *Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Commission*, 855 S.W.2d 792 (Tex. App.—Austin 1993, no writ). Because Sportscoach's second point of error is closely related to its first point of error and is not dispositive, we need not separately address it. *See* Tex. R. App. P. 47.1.

6

year or of the immediately prior model year in the dealer's inventory. *See id.* A manufacturer that fails to make such payments within sixty days of termination is liable for "the greatest of dealer costs, fair market value, or current price of the inventory," interest, attorney's fees, and costs. *Id*. § 5.02(b)(16)(F). Sportscoach argues that neither this section nor other Code provisions grant the Board authority to order payment to the dealer. We agree.

An agency may exercise only those specific powers that the legislature confers upon it in clear and express language. *Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Comm'n*, 855 S.W.2d 792, 797 (Tex. App.—Austin 1993, no writ). As a general rule, one may imply that the legislature intends that an agency should have whatever power is reasonably necessary to fulfill a function or perform a duty that the legislature has expressly placed in the agency. *Id.*; *see also Texas Dep't of Human Servs. v. Christian Care Ctrs., Inc.*, 826 S.W.2d 715, 719 (Tex. App.—Austin 1992, writ denied); *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137-38 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

In support of its position that the remedy ordered by the Board is not within the agency's authority, Sportscoach directs us to our decision in *Kawasaki Motors*, 855 S.W.2d at 792. *Kawasaki Motors* involved a similar challenge to the power of the predecessor of the Board, the Motor Vehicle Commission.[5] This Court held that the language at issue did not grant the Motor Vehicle Commission authority to order payments to a private party.[6] *See Kawasaki Motors*, 855

---

[5] *See* Act of August 10, 1991, 72d Leg., C.S., ch. 7, § 1A.03, 1991 Tex. Gen. Laws 226, 238 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), since amended).

[6] The relevant statute at issue in *Kawasaki Motors* was article 4413(36) of the revised civil statutes. Rev. Civ. Stat. Ann. art. 4413(36), *amended by* Act of May 18, 1989, 71st Leg., R.S., ch.

S.W.2d at 797. However, the legislature amended the Code in 1989 to provide the language we now analyze. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 1130, §§ 9, 11, 24, 1989 Tex. Gen. Laws 4653, 4657, 4658, 4665 (Tex. Rev. Civ. Stat. Ann. art. 4413(36), since amended).

The Board and Eastex argue that the amended sections of the Code confer on the Board the authority to adjudicate third-party claims. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) §§ 3.01, 3.03 (West Supp. 2000). They assert that the grant of powers contained in sections 3.01 and 3.03 constitutes specific statutory authority to adjudicate section 5.02(b)(16) claims. We disagree.

Although the legislature amended sections 3.01 and 3.03, it did not give the Board the power to adjudicate private claims or grant the Board authority to order a manufacturer to pay a dealer amounts owed for violations of the Code:

> The [Board] shall have and may, in its discretion and notwithstanding any other provision of law that is inconsistent with this Act, exercise the powers set forth in this Act, and shall have all other powers necessary, incidental, or convenient to carry out its duties and effectuate its express powers and duties. These powers and duties include the power to initiate and conduct proceedings, investigations, and hearings, administer oaths, receive evidence and pleadings, issue subpoenas to compel the attendance of any person, order the production of any tangible property, including papers, records, and documents, make findings of fact on all factual issues arising out of any proceeding initiated under this Act, specify, govern, and control appearance, practice, and procedure before the [Board], issue rules, conclusions of law, decisions, including declaratory decisions or orders, enter into contracts or execute instruments, retain counsel, utilize the services of the Attorney General of the State of Texas and thereafter institute and direct the conduct of legal proceedings in any forum or obtain other professional services as may be necessary and convenient, sanction for contempt, *assess and collect fees and costs including attorney's fees*, issue, suspend, and revoke licenses, prohibit and regulate acts and practices in connection with the distribution and sale of motor vehicles and warranty performance obligations, issue

---

1130, § 24, 1989 Tex. Gen. Laws 4653, 4665.

cease and desist orders in the nature of temporary and permanent injunctions, and levy
civil penalties.

*Id.* § 3.03 (emphasis added). Indeed, although the legislature expanded the powers of the Board in 1989, it did not grant the Board power to assess damages on behalf of, and order such damages paid to, a private party.[7]

We contrast the absence of authority to order payments in section 5.02(b)(16) with the specific authority to order reimbursement in section 6.07(g) of the Code. *See id.* § 6.07(g); *Kawasaki Motors*, 855 S.W.2d at 798 n.10. In *Kawasaki Motors*, we noted that the legislature has expressly provided, in other sections of the Code, by what means the Board may enforce Code violations. *See Kawasaki Motors*, 855 S.W.2d at 798. The Code's enforcement sections specifically grant the Board the power to assess a civil penalty,[8] issue a cease and desist order,[9] and issue an

---

[7] Compare the 1987 version of the Code, applied in *Kawasaki Motors*:

The Commission is authorized to issue orders and make determinations as may be necessary to carry out this Act. The orders shall set forth the findings on which the order is based and the reason for the particular action taken. All orders shall be signed by the chairman or vice-chairman and attested by the executive director and have the seal affixed.

Act of March 25, 1971, 62d Leg., R.S., ch. 51, § 1, 1971 Tex. Gen. Laws 92 (current version at Tex. Rev. Civ. Stat. Ann. art. 4413(36) (West Supp. 2000)).

[8] Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 6.01(a) (West Supp. 2000).

[9] *Id.* § 6.01A(a).

9

injunction;[10] the enforcement sections, however, do not empower the Board to order that damages be paid to a private party.

Eastex and the Board argue that the Board's statutory authorization to assess and collect costs gives it the power to assess a "cost" in the form of Eastex's damages resulting from Sportscoach's violation of the Code and to award that "cost" to Eastex. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(36) § 3.03 (West Supp. 2000). However, such an application would ignore the logical meaning of that language—that the power to assess costs means the power to assess and collect costs for the Board itself, not on a private entity's behalf. This interpretation is supported by section 6.01(a), which directs that civil penalties collected by the Board are payable into the state's highway fund. *See id.* § 6.01(a). Here the Board did not collect any costs or penalties to be deposited to any state fund. Instead it overstepped its authority and ordered Sportscoach to make direct payment to Eastex for damages resulting from a Code violation.

Having determined that the legislature did not grant the Board the authority urged by the Board and Eastex, we sustain Sportscoach's first point of error.

### CONCLUSION

We affirm the district court's judgment insofar as it holds that there is substantial evidence to support the Board's conclusion that Sportscoach violated the Code. We reverse the remainder of the judgment and remand that portion of the cause to the district court for further proceedings consistent with this opinion.

---

[10] *Id.* § 6.02.

10

_____
Lee Yeakel, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed in Part; Reversed and Remanded in Part

Filed:   October 19, 2000

Publish