TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00403-CV






Randy Pretzer; Scott Bossier; Bossier Chrysler-Dodge II, Inc.

d/b/a Bossier Country, Appellants



v.



The Motor Vehicle Board and Motor Vehicle Division of the Texas

Department of Transportation, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. 98-12171, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING






O P I N I O N



 In this case, we must decide whether appellees Motor Vehicle Board and Motor
Vehicle Division of the Texas Department of Transportation (collectively, "Board") had the statutory
authority and adduced substantial evidence to sanction appellants Randy Pretzer, Scott Bossier, and
Bossier Chrysler-Dodge II, Inc. d/b/a Bossier Country (collectively, "Bossier") for violations of the
Texas Motor Vehicle Code ("Code"). Bossier appeals a district court judgment affirming in part,
overruling in part, and reversing and remanding in part a final order of the Board, which imposed
$180,000 in civil penalties for violations of sections 4.06(a)(5) and 4.06(a)(6) of the Code. We
affirm the judgment of the district court in part, reverse and render in part, and remand the cause to
the district court for further proceedings in accordance with this opinion.


FACTUAL AND PROCEDURAL BACKGROUND


 Bossier Country ("dealership"), located in the rural community of Fairfield, Texas,
is licensed by the Board to sell motor vehicles. Scott Bossier is the president of the dealership and
owns a majority of its stock. With a background as an accountant, Scott Bossier handles financial
matters of the dealership but is not involved in its day-to-day activities. In 1991, Scott Bossier
placed an advertisement in a trade journal to sell the dealership, which had been losing money. 
Randy Pretzer, who had owned a financially troubled dealership in Washington state, answered the
ad. Although Pretzer did not have enough money to buy the dealership, Scott Bossier hired him as
general manager in mid-1992. As general manager, Pretzer runs the daily operations of the
dealership, which include training and supervising the sales staff. In an effort to increase sales, he
also put into place a seven-step sales approach, which sales staff described as "buy or die" and "very
high-pressure."

 On March 27, 1996, the enforcement section of the Board filed a complaint against
Bossier, alleging that beginning in 1991 it had violated the Code by engaging in various fraudulent
practices, including (i) submitting false and forged credit applications to potential creditors on behalf
of purchasers; (ii) submitting false and forged documents in support of credit applications; (iii)
forging buyers' signatures on sales contracts and altering terms of sales contracts after being signed;
(iv) defrauding customers by refusing to return trade-ins before sales transactions were final; (v)
defrauding customers by requiring them, as a condition of obtaining financing, to pay additional
money or agree to a designated "cash price" in excess of the true price at which Bossier sold the
vehicles for cash in the ordinary course of business; and (vi) making false representations to the
Board about the ownership of the dealership.

 The contested case hearing on the complaint was conducted from November 12
through November 25, 1996, with testimony from more than forty witnesses. On March 25, 1998,
the administrative law judge ("ALJ") issued an eighty-nine-page proposal for decision ("PFD"),
which included extensive findings of fact and conclusions of law. Among the conclusions of law
were that Bossier "willfully defrauded retail buyers" in violation of section 4.06(a)(5) of the Code
and that by "violation of any law relating to the sale, distribution, financing, or insuring of motor
vehicles" it had also violated section 4.06(a)(6). See Tex. Rev. Civ. Stat. Ann. art. 4413(36),
§ 4.06(a)(5), (6) (West Supp. 2003).

 On July 9, 1998, the Board issued its final order, adopting all of the findings of fact
and all but three of the conclusions of law (with a modification to another), and imposing civil
penalties of $150,000 on the dealership, $25,000 on Pretzer, and $5,000 on Scott Bossier. The order
further barred Pretzer for five years from having an ownership interest of ten percent or greater in
a franchised or independent dealer, serving as general manager of a dealer, or being in charge of the
business activities of a dealer. It also prohibited any dealership in which Pretzer was involved in any
of the above capacities from having a franchised or independent dealer's license for five years. 
Finally, it ordered the dealership, Pretzer, and Scott Bossier to cease and desist from committing any
additional violations of the Code.

 Bossier sought judicial review of the Board's order in a Travis County district court. 
The district court found substantial evidence to support the finding that Bossier "willfully defrauded
retail buyers" in violation of section 4.06(a)(5) of the Code but determined that the Board did not
have jurisdiction to enforce section 4.06(a)(6) of the Code as to retail sales of used motor vehicles
occurring before June 8, 1995. It therefore reversed the Board's conclusion that Bossier had violated
section 4.06(a)(6). Further, because the Board's order based the civil penalties on several statutory
violations, the district court reversed and remanded the cause to the Board for determination of civil
penalties based solely on violation of section 4.06(a)(5) of the Code.

 On appeal, Bossier contends in six of its eight issues that the district court erred in
holding that (i) the Board had the statutory authority to impose penalties against Pretzer and Scott
Bossier individually; (ii) Bossier received sufficient notice of the legal and factual bases of the
complaint filed against it; (iii) there is substantial evidence to support the Board's findings that
Bossier willfully defrauded retail buyers of automobiles under section 4.06(a)(5) of the Code; (iv)
the Board made sufficient findings of fact to support its conclusion that Bossier violated section
4.06(a)(5); (v) the Board was not required to give Bossier notice before filing its complaint; and (vi)
the Code does not violate the equal protection provisions of the United States and Texas
Constitutions or the separation of powers provision of the Texas Constitution. In its two remaining
issues, Bossier contends that the Board erroneously applied a "preponderance of the evidence"
standard of proof, instead of the higher "clear and convincing evidence" standard, and that the ALJ
erred in denying Bossier's motion to reopen the contested case hearing.


ANALYSIS


I.


 In its first issue, Bossier argues that the district court erred in holding that the Board
has the statutory authority to impose monetary penalties and sanctions against Scott Bossier and
Pretzer, individually, for violations of section 4.06(a)(5) of the Code. Because Scott Bossier and
Pretzer are not "licensees," (1) it contends that the Board has no statutory authority to sanction them
for violations of the Code.

 Statutory construction is a question of law, which we review de novo. Lopez v. Texas
Workers' Comp. Ins. Fund, 11 S.W.3d 490, 494 (Tex. App.--Austin 2000, pet. denied) (citing
Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989); Republic W. Ins. Co. v. State, 985
S.W.2d 698, 701 (Tex. App.--Austin 1999, pet. dism'd w.o.j.)). In construing these statutes, we are
mindful of the rules of statutory construction. One of the cardinal rules is that we must ascertain and
give effect to the legislature's intent for the provision we are construing. See Fleming Foods v.
Rylander, 6 S.W.3d 278, 284 (Tex. 1999); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280
(Tex. 1994); Calvert v. Texas Pipe Line Co., 517 S.W.2d 777, 780 (Tex. 1974). The legislature's
intent should be determined by reading the language used in the particular statute and construing the
statute in its entirety. See In re Bay Area Citizens Against Lawsuit Abuse, 982 S.W.2d 371, 380
(Tex. 1998); Taylor v. Firemen's & Policemen's Civil Serv. Comm'n, 616 S.W.2d 187, 190 (Tex.
1981). Further, we should read every word, phrase, and expression in a statute as if it were
deliberately chosen, and presume the words excluded from the statute are done so purposefully. See
Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex. App.--Austin
2002, pet. denied); City of Austin v. Quick, 930 S.W.2d 678, 687 (Tex. App.--Austin 1996), aff'd,
7 S.W.3d 109 (Tex. 1999) (citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.
1981)); see also 2A Norman J. Singer, Sutherland Statutory Construction § 47.25 (6th ed. 2000)
(stating that there is generally an inference that omissions from a statute are intentional). 
Furthermore, construction of a statute by an administrative agency charged with its enforcement is
entitled to serious consideration, as long as the construction is reasonable and does not contradict
the plain language of the statute. Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex.
1993); see Ford Motor Co. v. Motor Vehicle Bd., 21 S.W.3d 744, 762 (Tex. App.--Austin 2000, pet.
denied).

 We will first address the purposes of the Code and the Board's overall powers. The
Board "has broad power to regulate all aspects of the distribution and sale of motor vehicles." 
American Honda Motor Co., Inc. v. Texas Dep't of Transp., 47 S.W.3d 614, 624 (Tex. App.--Austin
2001, pet. denied); see Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 3.01(b) (West Supp. 2003). The
purpose of the Code is "to exercise the state's police power to insure a sound system of distributing
and selling motor vehicles through licensing and regulating manufacturers, distributors, converters,
and dealers of those vehicles . . . in order . . . to prevent frauds, unfair practices, discriminations,
impositions, and other abuses" that "affect[] the general economy of the State and the public interest
and welfare of its citizens." Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 1.02. The Code creates the
Board, id. § 2.01(a), and confers upon it "the general and original power and jurisdiction to regulate
all aspects of the distribution, sale, and leasing of motor vehicles." Id. § 3.01(a). The Code further
provides that "[u]nless otherwise specifically provided by Texas law not in conflict with the terms
of this Act, all aspects of the distribution and sale of motor vehicles shall be governed exclusively
by the provisions of this Act." Id. § 3.01(b). To accomplish this purpose, the Code authorizes the
Board: to administer the Code's provisions; to establish licensee qualifications; to ensure that motor
vehicle distribution, sale, and leasing complies with the Code and the Board's rules; to provide for
compliance with warranties; and to prevent fraud, unfair practices, discriminations, impositions, and
other abuses occurring with motor vehicle distribution and sale. Id. § 3.02; Subaru of Am., Inc. v.
David McDavid Nissan, Inc., 84 S.W.3d 212, 224 (Tex. 2002). And, the Code is to be "liberally
construed so as to effectuate its purposes." Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 1.04.

 The question then becomes: does section 4.06(a)(5) give the Board the power to
prevent "any person" from "willfully defrauding" a buyer? Bossier argues that the legislature has
not expressly authorized the Board to sanction non-licensees for violating section 4.06(a)(5). It urges
that this section pertains only to licensees because it falls under the title of "Sanctions; denial,
revocation, or suspension of license." Id. § 4.06. The Board contends that reading several Code
provisions together gives the Board this authority. We agree with the Board.

 The Board has broad enforcement powers to prevent fraud in the sale of motor
vehicles. The Board has the general power to "prohibit and regulate acts and practices in connection
with the distribution and sale of motor vehicles." Id. § 3.03(a). Section 1.02 gives the Board power
to enforce the Code "to other persons . . . to prevent frauds, unfair practices, discriminations,
impositions, and other abuses of our citizens." Id. § 1.02. The Board may levy a civil penalty or
issue a cease and desist order against "any person" who violates the Code. Id. §§ 6.01(a), 6.01A. 
"Person" in the Code "means a natural person, partnership, corporation, . . . or any other legal
entity," encompassing both licensees and non-licensees. Id. § 1.03(29).

 Preventing fraud by any person comports with the Code's overall scheme to protect
the public by regulating "all aspects of the distribution and sale of motor vehicles." Id. § 3.01(b). 
Viewing the Code's provisions together, we believe that the legislature intended that the Board be
authorized to sanction any person for "willfully defrauding any buyer." For the Board not to be able
to penalize non-licensed employees would render its powers to "prevent frauds . . . and other abuses
of our citizens" meaningless. Id. § 1.02 (emphasis added). This does not create any new
enforcement powers but instead only ensures that the Board may enforce the Code as to employees
of licensees. Therefore, we conclude that the legislature has authorized the Board to enforce section
4.06(a)(5) against non-licensees. Accordingly, we hold that the district court did not err in holding
that the Board had authority to levy civil penalties against Scott Bossier and Pretzer for violation of
section 4.06(a)(5). We overrule this part of Bossier's first issue.

 Bossier contends further that the legislature has not given the Board the power to
"expel" non-licensees from the motor vehicle distribution industry. The Board's order barred Pretzer
for five years from having an ownership interest of ten percent or greater in a franchised or
independent dealer, serving as general manager of a dealer, or being in charge of the business
activities of a dealer. It also prohibited any dealership in which Pretzer was involved in any of the
above capacities from having a franchised or independent dealer's license for five years. Bossier
contends that the Board, by imposing these penalties, took a position that is inconsistent with an
earlier Board decision, in which the director of the Board stated at a hearing that "it was a shame"
that the Board could not take the license of an individual. See Tex. Dep't of Transp., In the Matter
of License of BWB Automotive, L.P., Docket No. 00-0445-ENF (Motor Vehicle Bd. May 24, 2001)
(agreed final order).

 The powers of the Board are explicit: It has the power to levy civil penalties, see Tex.
Rev. Civ. Stat. Ann. art. 4413(36), § 6.01(a), and to deny a license application, or revoke or suspend
an existing license, see id. § 4.06. The Board may even deny or revoke a license because of an action
of "an officer, director, . . . or other person acting in a representative capacity for a licensee" that
would be cause for denying or revoking a license. Id. § 4.06(a)(7). (2) But no section of the Code gives
the Board the power to bar a person or entity from acquiring an ownership interest or applying for
a license. In fact, the Code has due process protections in place for license applicants: "[n]o license
shall be denied . . . except on order of the Board after a hearing." Id. § 4.06(g) (emphasis added). 

 Agencies have only those enforcement powers expressly delegated to them by the
legislature. See Harrington v. Railroad Comm'n, 375 S.W.2d 892, 895 (Tex. 1964) (determining
that the "sanctions and penalties . . . expressly provided by the Legislature are exclusive" and that
the Railroad Commission had no "power to impose different or additional sanctions or penalties of
its own devising"); Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Comm'n, 855 S.W.2d
792, 798 (Tex. App.--Austin 1993, no pet.) (declining to find implied enforcement powers under
the Code). "An agency may not erect and exercise a new or additional power, or a power that
contradicts a statute, from a specific power, function, or duty expressly delegated by that statute,"
nor may an agency exercise a new power solely for the administrative purposes of expediency. 
Lakeshore Util. Co. v. Texas Natural Res. Conservation Comm'n, No. 01-00156-CV, 2002 Tex.
App. LEXIS 6649, at *24 (Austin Sept. 12, 2002, pet. granted) (internal citations omitted).

 The Board has no express power to bar a person or entity from acquiring an
ownership interest or applying for a license. Therefore, we conclude that the district court erred in
holding that the Board had the power to limit Pretzer's employment in the motor vehicle industry
or to prevent Pretzer or any entity in which he holds a ten percent or greater interest from applying
for a license for five years. We reverse the district court's judgment upholding the Board's power
and render judgment in favor of Pretzer on this issue.


II.


 Bossier asserts in its third issue that the district court erred in holding that there is
substantial evidence to support the Board's findings that Bossier "willfully defrauded" retail buyers
in violation of section 4.06(a)(5) of the Code. It contends that there is no evidence to support the 
findings that Bossier acted with the requisite intent to: falsify or forge credit documents, forge or
alter retail installment contracts, refuse to return trade-ins, require buyers to pay more than the "true"
price for a vehicle, or that Pretzer and Scott Bossier directly participated in any of these violations. 
It further argues that the Board had no jurisdiction over used vehicle sales before June 8, 1995, and
thus that the Board had no power to punish Bossier for alleged violations of section 4.06(a)(5)
involving retail sales of used vehicles.

 The district court reviews final actions of the Board under the substantial evidence
rule. See Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 7.01(a) (West Supp. 2003). Under this rule, the
district court determines whether the Board's findings were supported by substantial, probative,
reliable evidence found in the whole record such that reasonable minds could have reached the
conclusion that the Board must have reached to justify its action. See Suburban Util. Corp. v. Public
Util. Comm'n, 652 S.W.2d 358, 364 (Tex. 1983); Ford Motor Co., 21 S.W.3d at 756. The district
court presumes that the Board's order is supported by substantial evidence, and the appealing party
has the burden of overcoming this presumption. See Sportscoach Corp. v. Eastex Camper Sales,
Inc., 31 S.W.3d 730, 733 (Tex. App.--Austin 2000, no pet.). The true test is not whether the agency
reached the correct conclusion but "whether some reasonable basis exists in the record for the action
taken by the [Board]." State v. Public Util. Comm'n, 883 S.W.2d 190, 204 (Tex. 1994); accord
Meier Infiniti Co. v. Motor Vehicle Bd., 918 S.W.2d 95, 98 (Tex. App.--Austin 1996, writ denied).

 Under the substantial evidence rule, a reviewing court may not substitute its judgment
for the judgment of the agency on the weight of the evidence on questions committed to agency
discretion. See Tex. Gov't Code Ann. § 2001.174 (Tex. 2000). However, a reviewing court must
reverse or remand the case for further proceedings if the complaining party's substantial rights have
been prejudiced because the agency's finding, inferences, conclusions, or decisions are:


(A) in violation of a constitutional or statutory provision;


(B) in excess of the agency's statutory authority;


(C) made through unlawful procedure;


(D) affected by another error of law;


(E) not reasonably supported by substantial evidence considering the reliable and
probative evidence in the record as a whole; or


(F) arbitrary or capricious or characterized by abuse of discretion or clearly
unwarranted exercise of discretion.



Id. § 2001.174(2)(A-F).

 In a preliminary issue, Bossier contends that the Board failed to find that Bossier, by
allegedly willfully defrauding customers, acted with "an evil and malicious intent to injure," which
was the definition of "willful" applied in another Board proceeding. See Tex. Dep't of Transp., In
the Matter of License of Bill Heard Chevrolet Corp., Docket No. 99-0165-ENF (Motor Vehicle Bd.
Nov. 16, 2000) (final order dismissing complaint). The PFD in Heard, adopted wholly in the final
order, cited the definition of "willful" from Brown v. State. 127 Tex. Crim. 621, 322 S.W.2d 626,
627-28 (1959) ("Willfully when used in a penal statute means . . . with evil intent or legal malice,
or without reasonable ground for believing the act to be lawful."). Here, the Board first contended
in its brief that in administrative cases, the second definition in Brown--"without reasonable ground
for believing the act to be lawful"--should apply. Brown, 322 S.W.2d at 628. In a letter brief after
oral argument, the Board asserted that there was substantial evidence to support the "willfully
defrauded" finding under either definition. We agree with the Board's latter argument.

 Although the ALJ did not define "willful" in her PFD, she supported the "willfully
defrauding" finding with substantial evidence under either definition. The underlying findings in
the PFD discussed specific instances of: falsifying income on credit applications, forging signatures
on credit applications, impermissibly including promissory notes in down payments, forging a
signature on a retail installment contract, switching names on credit applications, refusing to return
trade-in vehicles, and increasing cash prices of vehicles after the customers had agreed to lower
prices. The PFD also discussed Pretzer's and Scott Bossier's involvement in various violations. For
example, Pretzer worked closely with sales staff on sales transactions. Scott Bossier was aware of
and authorized the use of promissory notes, which the ALJ found was part of a scheme "to get
customers qualified for more expensive vehicles than those for which they would otherwise qualify,
thereby increasing the sales and profits of Bossier Country, and intentionally harming customers." 
Bossier argued that employees acted without authority, which the ALJ found not credible. But, she
concluded, "even if these actions were committed by employees without authority, that does not
remove the obligation of Bossier Country and its management to supervise their employees and
prevent such actions from occurring."

 Thus, the underlying findings showed that Bossier acted without reasonable grounds
for believing its acts to be lawful and further showed several instances of an intent to injure
customers through falsification, forgery, and bait-and-switch schemes. Therefore, we hold that there
was substantial evidence to support the "willfully defrauded" finding under either definition of
"willful." For the same reasons, we hold that substantial evidence supports the findings that Bossier:
falsified or forged credit documents, forged or altered retail installment contracts, refused to return
trade-ins, required buyers to pay more than the "true" price for a vehicle, and that Pretzer and Scott
Bossier directly participated in at least some of these violations.

 We now must determine whether the Board had jurisdiction to sanction Bossier for
section 4.06(a)(5) violations that involved retail sales of used vehicles before June 8, 1995. Section
4.06(a)(5), both before and after this date, has prohibited "willfully defrauding any buyer." The
district court found, based on the Board's interpretation, that section 4.06(a)(5) applied to new and
used vehicle transactions. The district court, however, found that the Board had no jurisdiction for
violations of section 4.06(a)(6), because the statute before June 8, 1995 prohibited "violation of any
law relating to the sale, distribution, financing, or insuring of new motor vehicles" (emphasis
added). (3)

 Bossier argues that the entire Code before June 8, 1995 applied only to sales of new
motor vehicles. It cites the "Policy and Purpose" section, which addressed regulation of "the
distribution and sale of new motor vehicles." (4) It also refers to the "Jurisdiction" section, which gave
the Board "general and original power and jurisdiction to regulate all aspects of the distribution and
sale of new motor vehicles." (5) After this date, the legislature removed "new" from both of these
sections. See Tex. Rev. Civ. Stat. Ann. art. 4413(36), §§ 1.02, 3.01(b) (West Supp. 2003). The only
case having analyzed this issue held that the earlier version of the Code applied only to new vehicles. 
See Casa Ford, Inc. v. Ford Motor Co., 951 S.W.2d 865, 871-72 (Tex. App.--Texarkana 1997, pet.
denied) (noting that several sections of the earlier version of the Code mentioned new vehicles but
no sections mentioned used vehicles). The Board argues that the Casa Ford holding was overly
broad and did not discuss section 4.06(a)(5). Additionally, the Board urges that we follow the
Board's interpretation that section 4.06(a)(5) applies to both new and used vehicle transactions
because it "best accords with the purposes" of the Code in prohibiting a dealer from "willfully
defrauding any buyer." (6)

 In Casa Ford, as here, a party argued that a provision of the earlier version of the
Code should apply to both new and used vehicles. See Casa Ford, 951 S.W.2d at 872. Our sister
court in Texarkana examined several provisions of the Code and determined that the overall statutory
scheme applied only to new vehicles. Id. at 871-72. The court considered fully and detailed
instances of the deletion of the word "new" from the Code. Significantly, "new" was deleted from
section 1.02, "Policy and Purpose," (7) and from sections 3.01 concerning jurisdiction and 3.02
concerning duties. (8) Id. at 872. The court then determined that although "elimination of the word
'new' in some sections is open to varying interpretations . . . the evidence indicates that [the Code]
applie[d] only to transactions involving new vehicles" before June 8, 1995. Id.

 The Board contends that Casa Ford should not control because the Board was not 
a party to the case and did not have an opportunity to "defend" its interpretation of the statute. The
Board is not the sole source of interpretation of the Code, nor does its absence from a case negate
a court's interpretation. We have been cited to no legislative history indicating the legislature's
intent and find the thorough statutory analysis in Casa Ford persuasive. We agree with the Casa
Ford court that attempting to construe one section "to be anomalous from the rest" of the Code does
not comport with the well-settled rule of statutory construction that we will not interpret a provision
in isolation, especially if that interpretation is out of harmony with the rest of the statute. See id.;
see also Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc., 997 S.W.2d 298, 305 (Tex.
App.--Austin 1999, pet. denied) (deferring to an agency's interpretation if "that reading is in
harmony with the rest of the statute").

 The Board further argues that Bossier's interpretation of section 4.06(a)(5) is
inconsistent with the rationale behind the Code because it would prohibit a new vehicle dealer from
willfully defrauding a purchaser of a new vehicle but not from willfully defrauding a purchaser of
a used vehicle. We are satisfied that this is one of the reasons that the statute was changed--or
clarified--in 1995. Because this uncertainty exists only with respect to sales of vehicles before June
8, 1995, it should not continue to vex those who seek to interpret it. We are satisfied, based on the
Casa Ford analysis, that deletion of "new" broadened the statute. We are also mindful that when
a statute involves a penalty, we should construe the statute narrowly to give parties fair notice of
what constitutes unlawful conduct. See Cain v. State, 882 S.W.2d 515, 519 (Tex. App.--Austin
1994, no writ) (discussing rules of statutory construction in the context of civil liability).

 We conclude that section 4.06(a)(5) did not apply to retail sales involving only used
vehicles before June 8, 1995. Accordingly, we sustain Bossier's subissue that the district court erred
in holding that the Board had jurisdiction to sanction Bossier for any retail sales involving only used
vehicles before June 8, 1995 that may have violated section 4.06(a)(5). We hold, however, that the
Board did have jurisdiction to sanction Bossier for any retail sales of new vehicles that may have
violated section 4.06(a)(5). We therefore affirm the district court's judgment remanding the
redetermination of civil penalties to the Board. We remand the cause to the district court with
instructions to remand the redetermination of penalties to the Board, in accordance with this opinion.


III.


 In its fourth issue, Bossier contends that the district court erred in holding that the
Board made the necessary ultimate and basic findings required by the Texas Administrative
Procedure Act ("APA"). Bossier argues specifically that the Board violated the APA and the Code
"by making no basic or underlying findings identifying the number of buyers willfully defrauded,
the names of buyers involved, the nature of the involvement of Pretzer and Scott Bossier, and the
number of acts that violated section 4.06(a)(5)." The APA requires that final decisions "must
include findings of fact and conclusions of law, separately stated." Tex. Gov't Code Ann.
§ 2001.141(b) (West 2000). Under the Code, an order or decision shall: "(1) include a separate
finding of fact with respect to each specific issue the board is required by law to consider in reaching
a decision; (2) set forth additional findings of fact and conclusions of law on which the order or
decision is based; and (3) give the reasons for the particular actions taken." Tex. Rev. Civ. Stat.
Ann. art. 4413(36), § 3.07(a) (West Supp. 2003). The Board has latitude in how it states findings
of fact:


 There is no precise form for an agency's articulation of underlying facts, and courts
will not subject an agency's order to some "hypertechnical standard of review." 
What is important is that the findings serve the overall purpose evident in the
requirement that they be made--i.e., they should inform the parties and the courts of
the basis for the agency's decision so that the parties may intelligently prepare an
appeal and so that the courts may properly exercise their function of review.



Goelke v. Houston Lighting & Power Co., 797 S.W.2d 12, 15 (Tex. 1990) (citations omitted); see
also Gene Hamon Ford, 997 S.W.2d at 311.

 The Board adopted almost all of the PFD, including its forty-five findings of fact and
all but three conclusions of law (with a modification to another conclusion). The first conclusion
of law found Pretzer individually liable because he "participated directly in the activities of Bossier
Country." Finding of fact thirty-one supported this statement, finding that "Mr. Pretzer participated
in the activities of Bossier Country, including the alleged violations, and directed its day-to-day
operations." Further support came in the narrative portion of the PFD, also adopted by the Board,
which discussed testimony from at least five witnesses about Pretzer's extensive involvement in the
dealership and alleged violations. Similarly, the second conclusion of law found Scott Bossier
individually liable because he was "aware and approved of the activities of Bossier Country." 
Finding of fact thirty stated that "Mr. Bossier was aware and approved of the use of promissory
notes, dealer rebates, and post-it notes on credit applications." The narrative portion of the PFD
supported these findings, with testimony from at least two witnesses about Scott Bossier's awareness
of the fraudulent practices.

 Furthermore, the third conclusion of law found that


 Bossier Country willfully defrauded retail buyers in violation of TMV Code
§ 4.06(a)(5) through the submission of false and forged credit applications, the
submission of false and forged documents in support of credit applications, by
forging and altering the terms of retail installment contracts after they had been
signed, by refusing to return trade-in vehicles before a retail installment contract had
been signed, and requiring customers to agree to a cash price in excess of the true
price at which the vehicles could be acquired for cash in the ordinary course of
business.



Findings of fact ten through twenty-eight listed specific alleged violations with the names of the
customers involved. Other findings of fact discussed employees' actions. Additionally, all of these
findings contained references to the hearing transcript, and the record amply supports the findings.

 We will not subject the Board's findings to a "hypertechnical standard of review." 
Goelke, 797 S.W.2d at 15. The findings more than adequately informed Bossier of the basis for the
Board's decision so that it could intelligently prepare an appeal. Id. Therefore, we conclude that the
district court did not err in holding that the Board made the necessary ultimate and basic findings
required by the APA and overrule Bossier's fourth issue.


IV.


 In its second and fifth issues, Bossier complains of inadequate notice of the charges
against it. In the second issue, Bossier argues that the district court erred in holding that Bossier
received sufficient notice of the legal and factual bases of the complaint. Focusing on the sufficiency
of the underlying factual bases, it contends that the Board's complaint was deficient because it did
not give details about the allegedly fraudulent conduct, such as names of buyers, dates, and numbers
of incidents.

 The Code adopts the contested-case notice requirements of the APA. See Tex. Rev.
Civ. Stat. Ann. art. 4413(36), § 3.08(a). Under the APA, any contested case notice must give a short,
plain statement of the matters asserted. Tex. Gov't Code Ann. § 2001.052 (West 2000). In other
words, "[a]n agency must . . . sufficiently identify the facts or evidence which it intends to prove at
the hearing so that a party may have a meaningful opportunity to prepare to defend." Ronald L. Beal,
Texas Administrative Practice and Procedure § 6.2.3 (1997) (citing Bowman v. Texas State Bd. of
Dental Exam'rs, 783 S.W.2d 318, 320-21 (Tex. App.--Austin 1990, no writ); Board of Pharmacy
v. Seely, 764 S.W.2d 806, 814 (Tex. App.--Austin 1988, writ denied)). The administrative code
requires that a notice of an adjudicative hearing before the Board give a "clear and concise factual
statement sufficient to inform the respondent with reasonable definiteness of the type of acts or
practices alleged to be in violation of the code." 16 Tex. Admin. Code § 101.42 (2002).

 Bossier argues that license revocation or suspension proceedings have higher due
process requirements than other contested-case proceedings. In hearings involving license
revocation, suspension, or annulment, however, the notice must only state the "facts or conduct
alleged to warrant the intended action." Tex. Gov't Code Ann. § 2001.054(c)(1) (West 2000). This
requirement is almost indistinguishable from the general notice requirements under section
2001.052.

 Citing the applicable statutes, the original complaint sets forth six allegations,
including that, beginning in 1991, Bossier submitted false and forged credit applications to potential
creditors, forged buyers' signatures on sales contracts, and defrauded customers by altering sales
prices of vehicles. Bossier filed an application for more "definite and detailed" statement, asking
for details about specific acts, including dates and the names of customers and creditors involved. 
The Board's response listed by allegation the names of customers involved, specific allegations, and
names of dealership personnel involved. Upon Bossier's objection that the response was inadequate,
the ALJ concluded that the response gave Bossier adequate notice and that the detailed information
that Bossier sought was "more properly the subject of discovery." Bossier argues that thus it was
"blindsided" at the contested case hearing because the complaint and response to the application for
more definite and detailed statement did not list specific instances, creditors, and dates of
transactions. It contends, for instance, that a list of names of customers was insufficient because
some of the customers had purchased more than one vehicle from the dealership.

 Bossier compares its lack of notice to another Board case, In the Matter of the License
of Neal Swanson, in which the Board found that Swanson did not receive adequate notice because
he did not receive dates of alleged violations. Texas Dep't of Transp., In the Matter of the License
of Neal Swanson, Docket No. 97-271 (Motor Vehicle Bd. Feb. 10, 2000) (final order dismissing
complaint). In Swanson, the ALJ determined that the Board's amended complaint was 
"gamesmanship and nearly disingenuous," still providing no factual bases for the complaint. Here,
the Board responded to Bossier's motion for more definite statement with specific facts: names of
customers involved, specific allegations, and names of dealership personnel involved.

 We conclude that the Board's complaint and response constitute "notice of facts or
conduct that allegedly warrant license suspension or revocation," Tex. Gov't Code Ann.
§ 2001.054(c)(1), that was "sufficient to inform [Bossier] with reasonable definiteness of the type
of acts or practices alleged to be in violation of the code." 16 Tex. Admin. Code § 101.42.

 Thus, we hold that the district court did not err in holding that Bossier received
sufficient notice of the legal and factual bases of the complaint filed against it by the Board. We
overrule Bossier's second issue.

 Bossier contends in its fifth issue that the district court erred in holding that the Board
was not required to give Bossier notice before filing the complaint. Statutory construction is a
question of law, which we review de novo. Lopez, 11 S.W.3d at 494. Section 2001.054(c)(1) of the
government code states that a "revocation, suspension, annulment, or withdrawal of a license is not
effective unless, before institution of state agency proceedings . . . the agency gives notice by
personal service or by registered or certified mail to the license holder of facts or conduct alleged to
warrant the intended action." Tex. Gov't Code Ann. § 2001.054(c)(1).

 Bossier admits that it is asking this Court to overrule Guerrero-Ramirez v. Texas State
Board of Medical Examiners, which it urges "is contrary to the express wording of section
2001.054." 867 S.W.2d 911 (Tex. App.--Austin 1993, no writ). In Guerrero-Ramirez, we held that
section 2001.054 "does not require any notice before the complaint is filed . . . but rather that the
complaint itself adequately inform the licensee of the subject of the adjudicative hearing." Id. at 918. 
Bossier implies that Guerrero-Ramirez is without merit because the Texas Supreme Court has not
reviewed its holding. In keeping with the Guerrero-Ramirez holding, we conclude that Bossier
received notice by complaint and was not otherwise entitled to pre-complaint notice. Therefore, the
district court did not err in its ruling that Bossier was not entitled to pre-complaint notice. We
overrule Bossier's fifth issue.


V.


 In its sixth issue, Bossier argues that the Board erred by applying a "preponderance
of the evidence" standard of proof instead of a "clear and convincing evidence" standard because a
license revocation proceeding requires a higher standard of proof. We disagree. The purpose of the
agency proceeding was to enforce civil statutes. In civil cases, "[n]o doctrine is more firmly
established than that issues of fact are resolved from a preponderance of the evidence." Sanders v.
Harder, 148 Tex. 593, 227 S.W.2d 206, 209 (1950). Texas applies the clear and convincing
evidence standard to civil matters only in extraordinary circumstances, such as civil commitment
hearings or involuntary termination of parental rights. See, e.g., Tex. Health & Safety Code Ann.
§ 574.034(a) (West Supp. 2003) (civil commitment); Tex. Fam. Code Ann. § 161.001 (West 2002)
(termination of parental rights); see also Ellis County State Bank v. Keever, 888 S.W.2d 790, 792
& n.5 (Tex. 1994). Moreover, we are guided by other license revocation proceedings that require
only a preponderance of the evidence standard. See, e.g., Tex. Gov't Code Ann. § 466.155(c) (West
Supp. 2003) (revocation of license of state lottery sales agent); Drake v. State, 488 S.W.2d 534, 538
(Tex. Civ. App.--Dallas 1972, writ ref'd n.r.e.) (disbarment of attorney). Therefore, we hold that
the Board did not err in applying a "preponderance of the evidence" standard of proof and overrule
Bossier's sixth issue.

VI.


 Bossier contends in its seventh issue that the district court erred in refusing to hold
that the Code violates equal protection of the laws under the United States and Texas Constitutions. 
See U. S. Const. amend. 14, § 1; Tex. Const. art. I, § 3. It further argues that the Code violates the
separation of powers provision of the Texas Constitution by impermissibly vesting judicial power
in an administrative agency without the right to a jury trial. See Tex. Const. arts. I, § 15; II, § 1; V,
§ 10.

 Because the constitutionality of a statute raises a question of law, we review this issue
de novo. See Barber v. Colorado Indep. Sch. Dist., 901 S.W.2d 447, 450 (Tex. 1995). In
determining the constitutionality of a statute, we begin with a presumption that it is constitutional. 
Barshop v. Medina County Underground Water Conserv. Dist., 925 S.W.2d 618, 629 (Tex. 1996);
Rylander v. 3 Beall Bros. 3, Inc., 2 S.W.3d 562, 566 (Tex. App.--Austin 1999, pet. denied). Courts
are to presume that "the Legislature has not acted unreasonably or arbitrarily; and a mere difference
of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation
as arbitrary or unreasonable." Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 520
(Tex. 1995).

 Bossier contends that the Code violates equal protection of the laws, without a
rational basis, by allowing only substantial evidence review in district court after the Board's
determination of a licensee's status, whereas licensees in some other professions, such as attorneys,
have the option of a de novo trial in district court. Compare Tex. Rev. Civ. Stat. Ann. art. 4413(36),
§ 7.01(a) (substantial evidence review), with Tex. Gov't Code § 81.072(b)(7) (administrative system,
including substantial evidence review, as an alternative to trial in district court). Because Bossier
does not distinguish between state and federal constitutions for equal protection analysis, we will not
discuss them separately. See Trinity River Auth. v. URS Consultants, Inc., 889 S.W.2d 259, 264
(Tex. 1994). In the absence of a need for heightened scrutiny, as is required, for example, when
analyzing a statute that discriminates on the basis of race or gender, we analyze an equal protection
challenge under rational basis review. See Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83-84
(2000). Under rational basis review, a statute is presumed constitutional as long as it is rationally
related to a legitimate governmental purpose. Owens-Corning v. Carter, 997 S.W.2d 560, 580 (Tex.
1999).

 The default for appeal from an administrative decision is substantial evidence review. 
See Tex. Gov't Code Ann. § 2001.174 (West 2000). The right to a trial de novo, on the other hand,
must be specifically stated in the statute. See Southwestern Bell Tel. Co. v. Public Util. Comm'n,
571 S.W.2d 503, 508 (Tex. 1978). We will not disturb the legislature's determination not to impose
a right to trial de novo in the Code. The lack of a trial de novo in the Code is rationally related to a
legitimate governmental purpose, which includes conservation of judicial resources. Furthermore,
the APA's contested case procedures and substantial evidence review under the APA provide a "full
panoply of procedural safeguards." Southwestern Bell Tel. Co., 571 S.W.2d at 507. Accordingly,
we hold that the Code, in providing only substantial evidence review, does not deny equal protection
of the laws under the United States and Texas Constitutions.

 Bossier also contends that the Board's ability to levy a civil penalty under section 6.01
impermissibly vests judicial power in an administrative agency, thus violating the separation of
powers doctrine. See Tex. Const. art. II, § 1; Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 6.01. In
addition, it argues that a party charged with a civil penalty has the right to a de novo jury trial under
the Texas Constitution. See Tex. Const. arts. I, § 15; V, § 10. These contentions lack merit. Article
I, section 15 of the Texas Constitution preserves a right to trial by jury only for those actions, or
analogous actions, available at the time that the constitution of 1876 was adopted. Barshop, 925
S.W.2d at 636; Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 450 (Tex. 1993). The
Board's assessment of penalties under the Code is not an action, or analogous action, to those tried
to a jury at the time that the constitution of 1876 was adopted. Further, a right to trial by jury does
not attach to appeals from administrative decisions. Texas Ass'n of Bus., 852 S.W.2d at 450. 
Indeed, parties do not have an automatic right to be heard in district court; "jurisdiction may be
conferred by [the Texas Constitution] or other law on some other court, tribunal, or administrative
body." Tex. Const. art. V, § 8 (emphasis added).

 Concerning the Board's alleged exercise of judicial power:


An administrative agency is not a "court" and its contested-case proceedings are not
lawsuits, no matter that agency adjudications are sometimes referred to loosely as
being "judicial" in nature. Agency adjudications do not reflect an exercise of the
judicial power assigned to the "courts" of the State in Tex. Const. Ann. art. V, § 1;
they are simply executive measures taken in the administration of statutory
provisions.



Beyer v. Employees Ret. Sys., 808 S.W.2d 622, 627 (Tex. App.--Austin 1991, writ denied). The
Board's ability to levy a civil penalty is not an exercise of judicial power and thus does not violate
the separation of powers doctrine. Therefore, we conclude that the ability of the Board to levy a civil
penalty, without availability of a trial de novo, does not violate the separation of powers provision
of the Texas Constitution. Accordingly, we hold that the district court did not err in its ruling that
section 6.01 of the Code is constitutional and overrule Appellant's seventh issue.


VII.


 In its eighth issue, Bossier contends that the ALJ erred in denying its motion to reopen
the evidentiary hearing. We review the ALJ's decision under an abuse of discretion standard. Meier
Infiniti Co., 918 S.W.2d at 101 ("The decisions of the Board in matters involving the agency's
administrative docket are within the discretionary control of the hearing officer."). Factors to
consider in a motion to reopen are: whether the evidence in support of the motion to reopen is
"material, relevant, and decisive," whether reception of such evidence will cause any undue delay,
and whether refusal to reopen will do an injustice. Word of Faith World Outreach Ctr. Church, Inc.
v. Oechsner, 669 S.W.2d 364, 367 (Tex. App.--Dallas 1984, no writ). The moving party must show
due diligence in procuring the new evidence. Id.

 Bossier sought to reopen the evidence on the ground that "one-third of the
enforcement section witnesses had acted in a manner that was totally inconsistent with the testimony
that they gave at the hearing" by returning to the dealership's employment, becoming dealership
employees, or buying vehicles from or shopping at the dealership. The Board counters that this
information is not decisive and only demonstrates that the witnesses were not motivated by personal
animosity when they testified. We agree and hold that the ALJ did not abuse her discretion in
denying Bossier's motion to reopen. Accordingly, we overrule Bossier's eighth issue.

CONCLUSION

 We hold that the Board had the statutory power to levy civil penalties against non-licensees Scott Bossier and Pretzer for violations of section 4.06(a)(5) involving retail sales of new
vehicles. We conclude, however, that the district court erred in holding that the Board had the ability
to levy civil penalties against Bossier for violations of section 4.06(a)(5) involving retail sales of
used vehicles alone before June 8, 1995. Accordingly, we remand this cause to the district court,
with instructions to remand redetermination of civil penalties to the Board in accordance with this
opinion. We further hold that the Board did not have the statutory power to prospectively limit
Pretzer's employment in the motor vehicle industry or prevent Pretzer or any entity in which he holds
a ten percent or greater ownership interest from applying for a license for five years. Accordingly,
we reverse the judgment of the district court on this issue and render judgment in favor of Pretzer. 
Having overruled all of Bossier's remaining issues, we affirm all other portions of the judgment of
the district court.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: January 16, 2003

1. A "licensee" is a person "who holds a license or general distinguishing number issued by
the Board" under the terms of the Code or chapter 503 of the transportation code. Tex. Rev. Civ.
Stat. Ann. art. 4413(36), § 1.03(20) (West Supp. 2003). Here, the licensee is Bossier Country.
2. It is worth noting that the Board did not invoke this provision in its complaint.
3. Act of June 8, 1995, 74th Leg., R.S., ch. 357, § 14, 1995 Tex. Gen. Laws 2887, 2893
(amended 2001) (current version at Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 4.06(a)(6)).
4. Act of May 20, 1987, 70th Leg., R.S., ch. 147, § 1, 1987 Tex. Gen. Laws 1781, 1781-82
(amended 1995) (current version at Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 1.02) (emphasis
added).
5. Act of May 18, 1989, 71st Leg., R.S., ch. 1130, § 9, 1989 Tex. Gen. Laws 4653, 4658
(amended 1995) (current version at Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 3.01(b)) (emphasis
added).
6. The Board urges that we apply its interpretation from an earlier decision determining that
the Board had jurisdiction over violation of section 4.06(a)(5) involving a used vehicle transaction. 
See Tex. Dept. of Transp., In the Matter of the License of Spiers Imports, Inc., Docket No. 90-101
(Motor Vehicle Comm'n. Dec. 6, 1990) (final order). This decision does not appear in the record
before us, and we may not consider it.
7. See Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 1, 1995 Tex. Gen. Laws 2887, 2887.
8. See id. at §§ 4, 5, 1995 Tex. Gen. Laws at 2890-91.